**Harve D. MASON and Pat J. Mason, Petitioners,**

v.

**Ralph J. PULLIAM (Special Agent/Intelligence Division, IRS) and Jim Kelly (Supervisor/Intelligence Division, IRS), Respondents.**

**Civ. A. No. C 74–2401 A.**

United States District Court, N. D. Georgia, Atlanta Division.

Oct. 15, 1975.

Stanley F. Birch, Jr., Greer, Sartain & Carey, Gainesville, Ga., for petitioners.

James Jeffries, Tax Div., Dept. of Justice, Washington, D. C., William D. Mallard, Jr., Asst. U. S. Atty., Atlanta, Ga., for respondents.

### ORDER

JAMES C. HILL, District Judge.

This is an action instituted by petitioners Harve D. and Pat J. Mason for the return of certain records and accounts which Mr. Mason had theretofore voluntarily loaned to a Special Agent of the Intelligence Division of the Internal Revenue Service, Ralph J. Pulliam. Action in this case was stayed pending a ruling by the Fifth Circuit Court of Appeals in the case of *Richey v. Smith*. This decision was handed down on July 21, 1975, *Richey v. Smith,* 515 F.2d 1239 (5th Cir. 1975), and in accordance with that ruling the Court held an oral hearing to receive evidence and to hear argument on the propriety of the Court's assuming "anomalous" jurisdiction. Upon questioning by the Court, it was found that none of the material facts were in dispute and counsel stipulated the following facts.

## I. FACTS

On December 4, 1974, Mr. Pulliam entered Mr. Mason's place of business, a retail grocery store, and requested a meeting with Mr. Mason in his private office. Once there, Mr. Pulliam identified himself; displayed his badge; told Mason of the nature of his visit; and read to Mr. Mason his Miranda warnings. Mr. Pulliam then asked permission to take certain of Mr. Mason's records and accounts with him. Mr. Mason was completely willing to cooperate, and the IRS received the papers with the complete and absolute permission of Mr. Mason.

The Court finds that the papers in dispute are the personal property of Mr. Mason, and to the extent it is relevant it appears Mrs. Mason also has some proprietory interest in the papers. Thus the owner, or perhaps the co-owner, of some property gave unconditional possession to that property to a government agency for an undefined period of time. The Court finds that this was a perfectly fine arrangement between gentlemen, one of whom runs a grocery operation, and one of whom works for the government. Every use of the property during this period of time by the IRS was totally authorized and petitioners have no complaint as to the use of the papers by the IRS or the manner by which the IRS obtained initial possession.

The end to this voluntary and cooperative arrangement came at 9:00 a. m. on December 11, 1974, when petitioners, through counsel, terminated any permission given Mr. Pulliam or the IRS to possession of the papers and demanded the immediate return of all records and documents belonging to them. Although admitting that the papers were the property of petitioners, respondents refused to return them because they were not yet through studying and copying them. Respondents were apparently willing to return the original papers within about one week after December 11.

The action for mandamus and injunctive relief was filed at 3:00 p. m. on December 11, and the Court, after hearing argument from both sides, ordered the papers to be turned over to the Clerk, pending a final disposition of the action.

## II. ISSUE PRESENTED

Succinctly stated, with immaterial matter discarded, the question to be decided is, "Can our government maintain possession of, inspect, copy, and otherwise use the private papers of one of its citizens, over the known objection and protest of the citizen, when such property was not obtained by the government through any legal process or compulsion?"

## III. JURISDICTION

■ The most troublesome initial question is whether or not the Court has jurisdiction to entertain this action. Petitioners argue that jurisdiction is present pursuant to 28 U.S.C. § 1361. While not necessarily rejecting jurisdiction under the mandamus statute, the Court does not reach it in light of the theory set out in *Richey*. This theory, of course, is the "anomalous" jurisdiction discussed in *Richey* and *Hunsucker v. Phinney*, 497 F.2d 29 (5th Cir. 1974), *cert. denied*, 420 U.S. 927, 95 S.Ct. 1124, 43 L.Ed.2d 397.

In *Richey* the Court set out a number of factors for a district court to consider in determining whether or not to exercise its discretion in favor of "anomalous" jurisdiction. Explanations of these factors were set out in detail in various footnotes.

While the Court cannot find that any seizure of the property displayed "a callous disregard for the constitutional rights of the taxpayer" at the time of the actual taking of possession by the IRS, the Court believes that, when viewed at the point of time when permission was revoked, the action by the IRS in refusing immediately to return the papers can only be described as total

failure by the government to recognize the right of a citizen to peaceful possession of his own property. Certainly, if this were an action where two private citizens were quarreling over the rightful possession of the documents, the Court would not feel compelled to take jurisdiction. But here we are considering fundamental rights of a citizen vis a vis his government. If the Court does not have jurisdiction to entertain this action, then there would be no forum available to a citizen to complain about any allegedly wrongful taking and use of his property.

Certainly all other factors listed by the Fifth Circuit are present in this action. Petitioners have an individual interest in and need for property they seek to be returned; petitioners could be irreparably harmed by denying a return of the property in the event that criminal indictments were returned against them; and, at this stage of the proceedings, there appears to be no adequate remedy at law.

One last question is whether or not the Court should exercise jurisdiction over IRS agents who can be considered only "quasi-court officials." The Fifth Circuit in *Richey* stated that such supervisory jurisdiction over law enforcement agencies should not be exercised as a routine matter, but that "its exercise may be justified in the circumstances of this case if the plaintiffs' allegations are substantiated." The factual circumstances in *Richey* are strikingly similar to the facts in this instant case, and the Court feels that it has an obligation to petitioners to exercise jurisdiction here where the uncontroverted facts show the government to continue in defiant possession of property, without legal process, when it has no permission from the owners to retain possession.

## IV. CONCLUSIONS

■■ It is clear from the previous discussion in this order that the Court does not find merit in any arguments presented by the government in support of its position. The government's principal argument, based upon the decision of *United States v. Ponder,* 444 F.2d 816 (5th Cir. 1971), is that the IRS can retain possession of the documents for a "reasonable" amount of time after permission from the taxpayer is withdrawn in order that it be allowed to finish copying the documents. The Court in *Ponder* stated at page 820:

> . . . [O]nce having voluntarily submitted records *in response to a summons,* it is only reasonable to assume that the government would conclude its examination and copy such records prior to return, even after a demand, and that it should have a reasonable time to do so. (emphasis added)

The Court believes, that while *Ponder* at first blush tends to be persuasive support for the government's position, it is distinguishable on two points from the instant action. In the first place, the production of the documents in *Ponder,* apparently voluntary, was made only after the production of a summons by the agents. More importantly, perhaps, and the second point of distinction, is that the demand for the return in *Ponder* did not assert a constitutional basis. The Court specifically declined to consider what "Ponder's position would have been if he had demanded the return of his records for the declared purpose of protecting his constitutional rights." 444 F.2d at 820, f. n. 5A. There is no question in this action, but that petitioners are asserting a claim for the records in part upon a constitutional right.

The Court has exercised its discretionary "anomalous" jurisdiction in this action because it feels that the issue presented is very important. It is important in the Court's view because of the position taken by the government which, from a pragmatic point of view, the Court recognizes as the only position the government can take. If the government obtains the permission of a taxpayer to have his records, that possession brings with it the lawful ability to

copy the records. Thus, the government could, in theory, get enough equipment and enough people and put the documents on a conveyor belt and copy them so fast one could not count them. The documents could possibly be copied in a manner of minutes.

· Being in that position, it is probably frustrating, having succeeded in obtaining the records without going through possibly lengthy legal or court processes, to realize that the government could have already copied the records, with the taxpayer's permission, but neglected to do so. Therefore the government argues that the Court ought to give it a little more time to do that which it might readily have done had it exerted itself harder, not realizing that the taxpayer was going to retract his permission.

But the court cannot conclude that this frustration forms the basis for any entity, especially the government, to defy the owner's demand for his own property for any convenient period of time. The Court realizes that this conclusion may obstruct a valid and good governmental purpose. But when all is said, we must realize that the right of a person to be secure in his own property and privacy *is,* by its nature, nothing more than an obstruction to all who would deprive him of them. That's what a person's rights amount to.

The Court must reject the government's argument that it be permitted to "bend" the citizen's right to his property "just a little bit"—perhaps for only 24 hours. Though perhaps not a judicially couched expression, it has, nevertheless, been sagely observed that there is no such thing as being "just a little bit pregnant." Furthermore, this suggestion is not that the government get just a part of the loaf. Counsel made it clear that in 24 hours' uninterrupted use of Mason's property the government could gobble down the whole loaf—copy everything. About all this proves is that, with the generous permission of the owner, the government has *already had* uninterrupted use of the man's property for as long as it needed it for

its purpose. It is not the fault of Mason or this court that it didn't make the most effective use of the time.

Finally, the Court must note in passing, and hardly more, the ultimate suggestion made at the hearing that, if the citizen has nothing to hide, he should not obstruct the government's rummaging around among his private papers. The world's history, but not this nation's, is cluttered with eras of seizure, mail interception, eavesdropping, wiretapping, and similar invasions justified by that argument. It is sufficient that the citizen elects to enjoy his freedom; he is not required to justify it. History does it for him.

Consequently, the Court finds that as of 9:00 a. m. on December 11, 1974, any permission that the IRS had to make any further use of the papers received from Mr. Mason terminated. Terminated was any right it had to its further custody, possession, or use of the papers; and in equity and law, and under the Constitution of this country, the papers should have been forthrightly returned to (or made available to) the owner. The government had no right after that time to copy any of these documents. Petitioners have a sufficient property interest in any copies made after demand for return of the originals to the return, also, of these copies. *See Hunsucker v. Phinney, supra,* at 35.

Therefore it is the judgment of this Court that petitioners have a right to immediate possession of all original records and documents voluntarily turned over to Special Agent Pulliam by petitioner Harve Mason on December 4, 1974, and have a right to the immediate possession of all copies of these records made by the IRS after 9:00 a. m., December 11, 1974. However, upon application by the government, and with the consent of counsel for petitioners, the Court suspends the implementation of this order pending an appeal by the government to the Court of Appeals. The records will remain in possession of the Clerk until further order of the Court.

It is so ordered.