**Kenneth H. LINN, International Marketing and Development Corporation and John A. Stassi, II, Plaintiffs-Appellants,**

v.

**Jack CHIVATERO, District Director of Internal Revenue Service, New Orleans, La., Bruce Milburn, etc., et al., Defendants-Appellees.**

No. 82–3309.

United States Court of Appeals, Fifth Circuit.

Sept. 19, 1983.

Chamberlain, Hrdlicka, White, Johnson & Williams, Robert I. White, Houston, Tex., Stassi & Rausch, Jos. W. Rausch, New Orleans, La., for plaintiffs-appellants.

Michael L. Paup, Chief, Glenn L. Archer, Jr., Asst. Atty. Gen., James P. Springer, Appellate Section, Tax Div., Dept. of Justice, Washington, D.C., for defendants-appellees.

Before CLARK, Chief Judge, THORNBERRY and RANDALL, Circuit Judges.

RANDALL, Circuit Judge:

Kenneth Linn is an officer and the majority stockholder of International Marketing and Development Corporation. Linn, his corporation, and one of his attorneys, John

1. Because the complaint alleges an unlawful search and seizure of Linn's personal property and because Linn is the party who seeks to assert a fifth amendment privilege, we have referred to him as the plaintiff in this action. Where appropriate, our use of Linn's name should be understood to refer to the other plaintiffs as well.

2. The summons directed Linn to produce:
All records in your possession or control for the period December 1, 1976 through January 31, 1981 relative to corporations of which you were an officer or of which you owned 10% or more of the stock (as defined by 26 U.S.C. § 1563 and 26 U.S.C. § 958) including but not limited to records of International Marketing and Development Corporation. Records requested include the following:

Stassi, II, brought this action seeking an injunction ordering several Internal Revenue Service agents to return certain documents accidentally produced in response to an IRS summons and further seeking an injunction against the use of any information gathered from examination of the documents. The district court dismissed the action and Linn[1] timely appealed. For the reasons set forth below, we reverse and remand with instructions.

I. FACTUAL AND PROCEDURAL BACKGROUND.

Linn is the subject of an ongoing investigation by the IRS. In furtherance of that investigation, the special agent in charge of the case, Elizabeth Wigginton, had a summons served on Linn. The summons ordered Linn to give testimony at his residence, and to produce the records of International Marketing and Development Corporation.[2]

Linn engaged Robert White and John Stassi as his attorneys. White and Wigginton agreed to postpone the date initially set for appearances. Some confusion ensued, and White allegedly did not become aware of the exact date for appearance until the morning of the appointed day. By that time, it was too late to comply fully with the summons. Linn, White and Stassi were all out of town, but the records were at Stassi's office in New Orleans. In an effort to comply partially with the summons, Stas-

1. Date of incorporation and names and addresses of the officers, agents, and stockholders.
2. Name and address of the custodian of the corporate records.
3. Corporate records including minute book, income and expense ledgers, source documents used to determine income and expenses.
4. Retained copies of all Federal, State, and Local tax returns and the workpapers used in preparing these returns.
5. Bank records and financial statements.
6. Records of assets owned by the corporation including method of acquisition and disposal and location and description of the assets.
7. Records of all corporate liabilities.

si and White agreed to send the records to Wigginton's office.

Stassi possessed not only the corporate records sought by the IRS, but several of what are asserted to be Linn's personal financial records. Stassi inadvertently sent *all* of the records to Wigginton. When he realized his mistake, he informed Wigginton of the error, first by telephone, then by hand-delivered letter, and finally in person. He stated that some of the furnished documents were Linn's personal records, as to which Linn wished to assert a fifth amendment privilege. Stassi and Wigginton agreed to go through all of the records on the following day and separate the corporate from the allegedly privileged personal documents. Wigginton, working until midnight, continued to copy the documents after Stassi's late afternoon visit, even though Stassi had allegedly asked that they be kept in a secure place overnight.

The next morning, Stassi and Wigginton segregated the documents into three groups. The first group included documents that the IRS was not interested in. The second group contained all of the documents that were undisputedly within the scope of the summons. The third group consisted of those documents that the IRS contended were covered by the summons, but that Stassi claimed were privileged. When Wigginton refused to relinquish the documents in the third group, Linn, his corporation, and Stassi brought this action.

Linn petitioned the district court for an injunction to prevent the IRS agents from examining or copying the disputed documents or using any information that the agents might have gathered by examining the documents. He also sought an injunction directing the IRS agents to return all of the disputed documents, as well as all copies made and memoranda compiled from those documents.

The court dismissed Linn's petition without prejudice. It determined that, because Linn was attempting to restrain the assessment and collection of a tax, his action was barred by the Anti-Injunction Act, 26 U.S.C. § 7421(a) (Supp. V 1981). Appealing from that judgment, Linn argues that the district court had jurisdiction to enter the requested injunction. In reply, the IRS agents contend that Linn's action is barred by the Anti-Injunction Act, the lack of anomalous jurisdiction, and the doctrine of sovereign immunity.

## II. APPELLATE JURISDICTION.

■ As an initial matter, the IRS suggests that we lack jurisdiction to decide this appeal because the district court's order was not a final one, as required by 28 U.S.C. § 1291 (1976). Linn petitioned for a temporary restraining order and an injunction, and nothing else. The court denied his petition in its entirety. This is not a case of piecemeal review, as there is nothing left to decide. Because the district court fully disposed of Linn's claim, there can be no doubt that Linn is "effectively out of court." *Moses H. Cone Memorial Hospital v. Mercury Construction Corp.,* —— U.S. ——, 103 S.Ct. 927, 933, 74 L.Ed.2d 765 (1983) (quoting *Idlewood Liquor Corp. v. Epstein,* 370 U.S. 713, 715 n. 2, 82 S.Ct. 1294, 1296 n. 2, 8 L.Ed.2d 794 (1962)). *See United States v. Mississippi Power & Light Co.,* 638 F.2d 899, 903 (5th Cir.1981), *cert. denied,* 454 U.S. 892, 102 S.Ct. 387, 70 L.Ed.2d 206 (1982); *Richey v. Smith,* 515 F.2d 1239, 1242–43 (5th Cir. 1975).

■ The IRS points to the district court's language dismissing Linn's petition "without prejudice to adjudication of plaintiff's claims in an appropriate future proceeding" as support for its contention that the district court's judgment is not an appealable order. This language did not alter the finality of the court's order. To say that Linn may bring a different action in the future is not to say that this action was not fully and finally disposed of below. The court's remark in no way detracts from the fact that its order has rejected every issue raised in Linn's complaint. The appealability of an order depends on its effect, not its language. *LeCompte v. Mr. Chip, Inc.,* 528 F.2d 601, 603 (5th Cir.1976). The district court's order was a final one, and this court has jurisdiction to hear the appeal.

## III. FEDERAL COURT JURISDICTION.

The primary issue before us is whether the Anti-Injunction Act precludes the federal courts from entertaining Linn's suit. The Act "withdraw[s] jurisdiction from the state and federal courts to entertain suits seeking injunctions prohibiting the collection of federal taxes." *Enochs v. Williams Packing & Navigation Co.,* 370 U.S. 1, 5, 82 S.Ct. 1125, 1128, 8 L.Ed.2d 292 (1962); *accord, Lange v. Phinney,* 507 F.2d 1000, 1003 (5th Cir.1975). Our first task is to determine the nature of the jurisdiction to be withdrawn.

In the past, we have relied on the exercise of "anomalous jurisdiction" in ordering the return of property unlawfully seized by federal officers. *See Mason v. Pulliam,* 557 F.2d 426, 429 (5th Cir.1977); *Richey v. Smith,* 515 F.2d 1239, 1243 (5th Cir.1975) (Fed.R.Crim.P. 41(e) and "general equitable jurisdiction of the federal courts"). The doctrine of anomalous jurisdiction is based on the court's inherent power to police the actions of officers of the court; this power has been extended to cover the actions of IRS agents. *Lord v. Kelley,* 223 F.Supp. 684, 689 (D.Mass.1963); *see also Richey, supra,* 515 F.2d at 1244; *Mason v. Pulliam,* 402 F.Supp. 978, 981 (N.D.Ga.1975), *aff'd,* 557 F.2d 426, 428 (5th Cir.1977).[3] Anomalous jurisdiction is exercised with "caution and restraint," however, and it is "subject to equitable principles." *Hunsucker v. Phinney,* 497 F.2d 29, 34 (5th Cir.1974), *cert. denied,* 420 U.S. 927, 95 S.Ct. 1124, 43 L.Ed.2d 397 (1975) (footnotes and citations omitted). Further, the courts have generally deemed important a showing of "callous disregard for constitutional rights" before they will exercise this somewhat unusual jurisdiction. *Id.; accord, Richey, supra,* 515 F.2d at 1243; *Mason, supra,* 402 F.Supp. at 980. The IRS vigorously denies that its agents have acted in callous disregard of Linn's constitutional rights.

The development of the doctrine of anomalous jurisdiction was necessitated, at least in part, by the amount-in-controversy requirement for federal question jurisdiction, 28 U.S.C. § 1331 (1976) (superseded). *See, e.g., Hunsucker, supra,* 497 F.2d at 36. Congress' repeal of this requirement in 1980 has eliminated the monetary barrier to judicial review of cases such as this one. *See* 28 U.S.C. § 1331 (Supp. V 1981). Although the plaintiffs did not specifically mention section 1331 in their pleadings, the district court properly assumed that they had stated a claim under 28 U.S.C. § 1331, as well as under the anomalous jurisdiction doctrine, because it is clear from the face of their complaint, which seeks recovery under the fourth and fifth amendments to the United States Constitution, that they have alleged federal question jurisdiction. *See Bell v. Hood,* 327 U.S. 678, 681–82, 66 S.Ct. 773, 775–76, 90 L.Ed. 939 (1946) (specific mention of jurisdictional statute not necessary where complaint alleges claims arising under Constitution); *Hildebrand v. Honeywell, Inc.,* 622 F.2d 179, 181 (5th Cir.1980) (failure to cite jurisdictional statute does not "defeat jurisdiction if the facts alleged in the complaint satisfy the jurisdictional requirements of the statute"). Since we conclude that, were it not for the existence of the Anti-Injunction Act, the federal courts would normally have jurisdiction over this action under 28 U.S.C. § 1331, we need not determine whether the plaintiffs have met the strict requirements for the exercise of anomalous jurisdiction as well, nor need we decide the interesting question whether the doctrine of anomalous jurisdiction survives the repeal of the amount-in-controversy requirement of section 1331.[4]

---

3. The jurisdiction is "anomalous" because there is no specific statutory or constitutional authority on which it is based. *Lord, supra,* 223 F.Supp. at 687–89.

4. While the concurring opinion by Chief Judge Clark criticizes us for failing to "address the continued validity of anomalous jurisdiction," his reasons for insisting that the "doctrine should be put to rest" are not entirely clear. Judge Clark complains about the necessity for an examination of the "merits of the controversy *before* determining" (emphasis in original) whether anomalous jurisdiction exists, a practice that he maintains "should be kept to a minimum." Judge Clark would decide this

The Anti-Injunction Act, with exceptions not pertinent here, provides:

> [N]o suit for the purpose of restraining the assessment or collection of any tax shall be maintained in any court by any person, whether or not such person is the person against whom such tax was assessed.

26 U.S.C. § 7421(a) (Supp. V 1981). The principal purpose of the Act is to protect the government's "need to assess and collect taxes as expeditiously as possible with a minimum of preenforcement interference, 'and to require that the legal right to the disputed sums be determined in a suit for refund.'" *Bob Jones University v. Simon,* 416 U.S. 725, 736, 94 S.Ct. 2038, 2045, 40 L.Ed.2d 496 (1974) (quoting *Enochs, supra,* 370 U.S. at 7, 82 S.Ct. at 1129). In keeping with its protective purposes, we have interpreted the Act broadly: it is applicable not only to the assessment and collection of taxes, but to "activities which are intended to or may culminate in the assessment or collection of taxes" as well. *Kemlon Products & Development Co. v. United States,* 638 F.2d 1315, 1320 (5th Cir.), *modified on other grounds,* 646 F.2d 223 (5th Cir.), *cert. denied,* 454 U.S. 863, 102 S.Ct. 320, 70 L.Ed.2d 162 (1981) (quoting *United States v. Dema,* 544 F.2d 1373, 1376 (7th Cir.1976), *cert. denied,* 429 U.S. 1093, 97 S.Ct. 1106, 51 L.Ed.2d 539 (1977)); *accord, Smith v. Rich,* 667 F.2d 1228, 1230 (5th Cir.1982).

Linn's decision to cast his lawsuit in constitutional terms does not mean that the Anti-Injunction Act is inapplicable. *See, e.g., Bob Jones, supra* (first amendment, equal protection and due process challenges to revocation of tax-exempt status of educational institution allegedly practicing racial discrimination); *Bowers v. United States,* 423 F.2d 1207 (5th Cir.1970) (fifth amendment challenge to government's right to collect wagering taxes). On the other hand, the fact that IRS agents, rather than some other government officials, were allegedly responsible for the constitutional violation does not deprive us of the power to remedy that violation where the agents' status as tax officials is incidental to the underlying complaint. *See, e.g., Mason, supra; Richey, supra; cf. Rutherford v. United States,* 702 F.2d 580 (5th Cir.1983) (federal question jurisdiction to consider claim of unlawful deprivation of liberty by IRS agent). In order to decide whether the Act applies to this case, we must determine whether the "primary purpose" of Linn's lawsuit is to recover his property, irrespective of the involvement of the IRS agents, or whether it is a suit to restrain the collection of taxes or the collection of information that would aid in the assessment of taxes. *See Bob Jones,* 416 U.S. at 738, 94 S.Ct. at 2046.

Our task is made more difficult by the hybrid nature of this case. To the extent that Linn seeks a return of property seized in violation of his fourth amendment rights, the fact that the government officials who seized his property were IRS agents is not

case on the basis of an exception to the Anti-Injunction Act; however, the Act itself requires a similar examination of the merits of the controversy in order to determine whether the court has jurisdiction, since the *Enochs* exception applies only if it is clear that under no circumstances could the government ultimately prevail. *Enochs v. Williams Packing & Navigation Co.,* 370 U.S. 1, 7, 82 S.Ct. 1125, 1129, 8 L.Ed.2d 292 (1962).

Judge Clark also suggests that addressing the continued vitality of the doctrine of anomalous jurisdiction will somehow clarify what he perceives to be "a confused body of case law." Since Judge Clark has not elaborated on why he finds the case law confusing, we are not certain how putting the nails into the doctrine's coffin will remedy the confusion. We note, however, as discussed *infra,* that the cases cited by Judge Clark are entirely consistent with our resolution of this case. *Compare Richey, supra,* (district court erred in dismissing for lack of jurisdiction motion for return of property allegedly seized in violation of the fourth amendment); *and Hunsucker, supra* (assuming that Anti-Injunction Act does not apply as long as case concerns return of property unlawfully seized, not tax assessment), *with Crenshaw County Private School Foundation v. Connally,* 474 F.2d 1185, 1188 (5th Cir.1973) (Anti-Injunction Act bars private school's challenge to denial of tax-exempt status because tax exception ruling is "directly involved with the assessment and collection of taxes"); *and Bowers v. United States,* 423 F.2d 1207 (5th Cir.1970) (Anti-Injunction Act bars fifth amendment challenge to the *assessment* of taxes).

particularly relevant to his claim. To the extent that he seeks to enjoin the use of information contained in the disputed documents on fifth amendment grounds, however, he is arguably attempting to keep information from the IRS through procedures other than those provided by the Internal Revenue Code. It was the fifth amendment aspect of the case that caused the district court to conclude that this was indeed a tax case, and that if Linn had wanted to preserve his fifth amendment claim, he should have refused to comply with the summons, thereby forcing the IRS to institute a summons enforcement proceeding. 26 U.S.C. §§ 7402(b), 7604 (1976 & Supp. V 1981). Our review of the facts alleged in support of Linn's complaint leads us to conclude that the primary dispute at this point concerns the unlawful retention of his records. Since our prior case law indicates that the fourth amendment, record retention, aspect of the case is not governed by the Anti-Injunction Act, we hold that the district court should have exercised its jurisdiction over Linn's request for the return of records allegedly retained in violation of the fourth amendment.[5]

In both *Mason, supra,* and *Richey, supra,* we addressed the plaintiff's fourth amendment claim without even mentioning the possible applicability of the Anti-Injunction Act. Like the plaintiffs in *Mason* and *Richey,* Linn has alleged a serious violation of his fourth amendment right to be free from unreasonable searches and seizures. If the court does not have jurisdiction to entertain this action, there may be no forum available for his complaint about the allegedly wrongful retention of his property. *Mason,* 402 F.Supp. at 981. Unlike the plaintiff in *Bob Jones,* Linn will not be able to seek relief for the constitutional violation in a refund suit because he does not challenge the propriety of any tax that may be assessed against him, but rather the unlawful retention of his personal records. *See*

*Rutherford, supra,* 702 F.2d at 584 (refund suit inadequate remedy where plaintiffs sought recompense for alleged abuses, not return of taxes assessed). Further, in the absence of a pending criminal proceeding, the possibility of eventual suppression affords little solace. *Richey,* 515 F.2d at 1244 n. 11.

In dismissing this action, the district court relied in part on our statement in *Hunsucker* that injunctive relief would not be available absent exceptional circumstances if the case were a tax case:

> Hunsucker did not contend that 28 U.S.C. § 1331 federal question jurisdiction exists in this case. We believe he was correct in not making such a contention. The only means by which Hunsucker could have satisfied the jurisdictional amount requirement would be by conceptually linking his action to the $36,000 assessment he says was threatened at the time this action was begun. But linking the threatened assessment to the present action would compel a conclusion which Hunsucker has assiduously denied, for it would imply that the present action is a controversy concerning federal taxes rather than one relating solely to searches and seizures. And if it is a tax case, it is a case in which the court lacks power to grant the declaratory relief requested, and in which injunctive relief is not available absent exceptional circumstances not shown to be present here. *See* 26 U.S.C. § 7421(a) . . . . Accepting Hunsucker's argument that this is not a tax case, or at least that he did not intend it to be, we are unable to find jurisdiction under § 1331.

497 F.2d at 36 (citations omitted). In fact, the quoted paragraph demonstrates why the Anti-Injunction Act should not be applied to Linn's fourth amendment complaint about the retention of his property. In *Hunsucker,* the plaintiff could not allege

---

5. The IRS also argues that this suit is barred by the doctrine of sovereign immunity. This argument is without merit. There is no sovereign immunity when, as is alleged here, a government agent acts in an unconstitutional manner.

*Dugan v. Rank,* 372 U.S. 609, 621–22, 83 S.Ct. 999, 1006–07, 10 L.Ed.2d 15 (1963); *Alabama Rural Fire Ins. Co. v. Naylor,* 530 F.2d 1221, 1226 (5th Cir.1976).

jurisdiction under 28 U.S.C. § 1331 without transforming his action into "a controversy concerning federal taxes" because of the amount-in-controversy requirement. 497 F.2d at 36. The *Hunsucker* court assumed, however, that as long as the case related "solely to searches and seizures," rather than to federal taxes, the Act was inapplicable. *Id.* The only difference between Linn's search and seizure case and Hunsucker's, with respect to the applicability of the Anti-Injunction Act, is that the removal of the amount-in-controversy requirement has eliminated the need to link the fourth amendment claim to a tax assessment claim.

The decision to entertain Linn's fourth amendment claim for the return of his property now is not in conflict with the precedents, nor will it result in any improper judicial interference with the tax collection process. In both *Bob Jones* and *Enochs,* the Supreme Court concluded that the primary purpose of the lawsuit was to restrain the assessment of taxes; restraint of a tax assessment is not the purpose here. In *Kemlon, supra,* the plaintiff-corporation wanted to prevent the IRS from gathering information that would have been useful in making a tax assessment. *See also Black v. United States,* 534 F.2d 524 (2d Cir.1976) (plaintiff, who ran tax preparation service, requested that the IRS be enjoined from contacting his clients); *United States v. Dema,* 544 F.2d 1373 (7th Cir.1976), *cert. denied,* 429 U.S. 1093, 97 S.Ct. 1106, 51 L.Ed.2d 539 (1977) (plaintiff requested permanent injunction against the IRS' issuing any subpoenas or requesting any of his books or records).

The essence of Linn's fourth amendment claim is not that the IRS should be enjoined from obtaining information to which it is lawfully entitled, but rather that it should obtain that information in accordance with the tax law, i.e., through a summons enforcement proceeding.[6] The delay caused by a taxpayer's decision to litigate the IRS' right to examine his personal records is a delay permitted by the Internal Revenue Code itself, *see* 26 U.S.C. §§ 7402(b), 7604, not by unwarranted judicial interference with the tax collection process. Resolution of Linn's request for the return of the disputed documents will permit the parties to proceed as they should have in the first place. Accordingly, we hold that the district court does have jurisdiction to consider Linn's request for the return of records allegedly retained in violation of the fourth amendment, and we remand the case for proceedings consistent with this opinion.[7]

The IRS should be permitted to amend its pleadings to request enforcement of the summons as to the disputed documents. At that point, the district court should determine whether the documents fall within the scope of the summons and whether they are corporate or personal records. If the documents are corporate, then the government's retention of them is proper. If the documents are personal, then the court must decide whether they are protected under

---

**6.** In concluding that Linn had an adequate remedy at law, the district court listed a summons enforcement proceeding as one of Linn's legal options. Chief Judge Clark, in concurrence, insists that the "taxpayer's constitutional rights are safeguarded in a summons enforcement proceeding." Both the district court and Judge Clark ignore the fact that it is the IRS, not the taxpayer, who must bring such a proceeding. Linn's revocation of consent to search his records was presumably an attempt to force the IRS to institute summons enforcement proceedings if it desired to examine the records further.

**7.** On appeal, the parties have urged us to consider the merits of this controversy. Relying on *United States v. Ponder,* 444 F.2d 816 (5th

Cir.1971), the IRS maintains that the agents did not violate Linn's constitutional rights because he voluntarily handed the documents over to the IRS. Linn contends that this case is like *Mason,* in which we held that the government must abide by the taxpayer's decision to withdraw his consent to examine his records and to reinvoke his constitutional rights. Linn has also asked us to determine whether the disputed documents are personal or corporate documents, and whether they actually fall within the scope of the summons. Because the district court had concluded that it had no jurisdiction over this case, it did not reach the merits of Linn's claims. In the absence of fact-findings by the district court, it is not appropriate for us to reach the merits here.

the fifth amendment, and if they are, the government must return the disputed documents—originals and copies—to Linn. The question whether the information already obtained by the government should be suppressed as fruit of the poisonous tree can be litigated at a future suppression hearing if the government should seek to use that information.

It should be clear from a reading of this opinion that we do not hold, as Chief Judge Clark suggests in his concurring opinion, that all a taxpayer need do to avoid the proscriptions of the Anti-Injunction Act is to style his complaint to allege a constitutional violation. We have stated in unequivocal terms that the fact that the lawsuit involves a constitutional claim does not mean that the Anti-Injunction Act is inapplicable. Rather, we have followed the dictates of the Supreme Court in *Bob Jones* and attempted to determine the primary purpose of this lawsuit. Recognizing that the "search and seizure" aspects and the "tax" aspects of the case "are not mutually exclusive," we have tried to separate the non-tax claim from the tax claim and to deal with the former so that the latter may be resolved as the Internal Revenue Code provides. Judge Clark insists that our approach is inconsistent with the purposes of the Act. His attempt to bring every IRS action within the Act's scope, however, would appear to be inconsistent with the fourth amendment and with the courts' insistence on the availability of a remedy for the violation of constitutional rights. *See Bivens v. Six Unknown Named Agents,* 403 U.S. 388, 396–97, 91 S.Ct. 1999, 2004–05, 29 L.Ed.2d 619 (1971).

## IV. CONCLUSION.

In summary, we hold that the district court has jurisdiction over Linn's constitutional claims under 28 U.S.C. § 1331, and that the Anti-Injunction Act does not bar consideration of Linn's request for the return of records allegedly retained in violation of the fourth amendment because that request pertains to his constitutional right to be free from unreasonable searches and seizures, not his tax liability. Therefore,

the propriety of the government's retention of the disputed documents was properly before the district court.

The district court's decision dismissing this action for lack of jurisdiction is REVERSED and the case is REMANDED for proceedings consistent with this opinion.

CLARK, Chief Judge, concurring in the judgment:

I agree with the result but not the analysis of the majority. Because the analysis appears to me to depart unnecessarily from prior precedent and from a logical and realistic application of the Anti-Injunction Act, I consider it necessary to specially concur.

I

The majority refuses to address the continued validity of anomalous jurisdiction. Yet virtually all the cases it relies on in support of its result concerned anomalous jurisdiction. It refuses to address the matter despite a confused body of caselaw in need of clarification. *Compare Richey v. Smith,* 515 F.2d 1239 (5th Cir.1975) and *Hunsucker v. Phinney,* 497 F.2d 29 (5th Cir.1974), *cert. denied,* 420 U.S. 927, 95 S.Ct. 1124, 43 L.Ed.2d 397 (1974), with *Crenshaw County Private School Foundation v. Connally,* 474 F.2d 1185 (5th Cir.1973); *Bowers v. United States,* 423 F.2d 1207, 1208 (5th Cir.1970).

The doctrine of anomalous jurisdiction was necessitated by the jurisdictional amount requirement in 28 U.S.C. § 1331. The exercise of jurisdiction was "anomalous" because the federal courts had created their own jurisdiction without any constitutional or statutory basis in the face of inconsistent, if not antithetical, Congressional expression. With the elimination of the jurisdictional amount requirement, anomalous jurisdiction—once a necessary evil—has become a superfluous anachronism.

It is impossible to imagine a case in which anomalous jurisdiction would have existed that did not involve a federal question. This case illustrates that anomalous jurisdiction is a dead letter. Linn alleges that

IRS agents are violating rights guaranteed him under the fourth and fifth amendments. The remedy he seeks is an order enjoining the agents from continuing to violate those rights. His action is one arising under the Constitution. *See Gully v. First National Bank,* 299 U.S. 109, 112, 57 S.Ct. 96, 97, 81 L.Ed. 70 (1936). Jurisdiction thus obtains under § 1331. *Compare Hunsucker* at 36 (§ 1331 jurisdiction not established because jurisdictional amount not satisfied).

When anomalous jurisdiction prevailed, the court was forced to examine the merits of the controversy *before* determining whether it had jurisdiction to decide the controversy. Anomalous jurisdiction did not exist unless the facts demonstrated that there was a "callous disregard" of the taxpayer's constitutional rights and that equitable relief would be appropriate. *Hunsucker* at 34. In order to make these findings, it was obviously necessary to delve into the merits of the case. There may be other instances in the law where we indulge such an illogical inquiry, but those instances should be kept to a minimum. Because jurisdiction will always exist under § 1331, there is no longer any need to exercise anomalous jurisdiction in cases such as the one at bar. The doctrine should be put to the rest.

## II

The majority wisely refuses to apply an anomalous jurisdiction analysis in this case. In declining to do so, however, it creates a new approach that is unrealistic, inconsistent with the purposes of the Anti-Injunction Act, and unnecessary.

Under the majority's analysis, the district court is required to label a given lawsuit as either a "search and seizure case" or a "tax case." I submit that it is more realistic to recognize that the court is addressing a search and seizure issue within the broader context of an action to collect taxes. If a taxpayer's only concern is that his constitutional rights be vindicated, a *Bivens* suit will do. That is not this case. Here, the taxpayer is attempting to thwart the IRS's discovery process for the sole purpose of preventing the assessment of taxes against him.

In choosing the proper label, the majority directs the district courts to determine whether the "primary purpose" of the taxpayer's lawsuit is "to recover his property," or to "restrain ... the collection of information that would aid in the assessment of taxes." The two goals are not mutually exclusive. Just as in the instant case, the typical taxpayer's goal in this situation is to restrain the collection of information that would aid in the assessment of taxes *by* recovering his property. The recovery of documents is nothing more or less than a means to an end. If the collection process of the IRS is stymied, the threatened assessment of taxes is too. In my view, the majority has directed the district court to perform an impossible feat.

The majority's approach is also inconsistent with the purposes of the Anti-Injunction Act. The object of the Act is to "withdraw jurisdiction from the state and federal courts to entertain suits seeking injunctions prohibiting the collection of federal taxes." *Enochs v. Williams Packing & Navigation Co.,* 370 U.S. 1, 5, 82 S.Ct. 1125, 1128, 8 L.Ed.2d 292 (1962). *See also Lange v. Phinney,* 507 F.2d 1000, 1003 (5th Cir.1975). Congress intended to protect the government's need to assess and collect taxes as expeditiously as possible with a minimum of preenforcement judicial interference. *Bob Jones University v. Simon,* 416 U.S. 725, 736, 94 S.Ct. 2038, 2045, 40 L.Ed.2d 496 (1974); *Enochs,* 370 U.S. at 7, 82 S.Ct. at 1129; *Smith v. Rich,* 667 F.2d 1228, 1230 (5th Cir.1982). Therefore, in virtually all situations, the Act directs that the legal right to disputed sums be determined in a refund suit. The tax collector is protected from litigation until that time. *Bob Jones University,* 416 U.S. at 737, 94 S.Ct. at 2046; *Enochs,* 370 U.S. at 7, 82 S.Ct. at 1129; *Rich* at 1230. In keeping with its protective purposes, the Act has been interpreted broadly. It is applicable not only to the assessment and collection of taxes, but to activities which are intended to or may

culminate in the assessment or collection of taxes as well. *Kemlon Products & Development Co. v. United States,* 638 F.2d 1315, 1320 (5th Cir.), *modified on other grounds,* 646 F.2d 223, *cert. denied,* 454 U.S. 863, 102 S.Ct. 320, 70 L.Ed.2d 162 (1981) (quoting *United States v. Dema,* 544 F.2d 1373, 1376 (7th Cir.1976), *cert. denied,* 429 U.S. 1093, 97 S.Ct. 1106, 51 L.Ed.2d 539 (1977)). *See also Rich* at 1230; *Campbell v. Guetersloh,* 287 F.2d 878 (5th Cir.1961).

According to the majority, all a taxpayer need do is style his complaint in terms of a fourth amendment violation and he can thereby avoid the proscriptions of the Act. There is no sound reason for carving out an exception for cases where the taxpayer is discerning enough to plead a fourth amendment violation. Whether a taxpayer styles his case in constitutional terms or otherwise, the ultimate effect of the court's assumption of jurisdiction is to exercise jurisdiction where it has been withdrawn, and to interfere with the "government's need to assess and collect taxes as expeditiously as possible with a minimum of preenforcement judicial interference." *Bob Jones,* 416 U.S. at 736, 94 S.Ct. at 2045. *See especially Bowers v. United States,* 423 F.2d 1207 (5th Cir.1970) (Anti-Injunction Act applied despite taxpayer's fifth amendment challenge).

Finally, I believe that the judicially created exception fashioned by the majority is simply unnecessary. Congress has already mandated detailed procedures for the adjudication of tax cases. To say that the taxpayer may not thwart the IRS investigation is not to say that his claim will never be heard. In a criminal case, the majority concedes that the question whether information "should be suppressed as fruit of the poisonous tree can be litigated at a future suppression hearing if the government should seek to use that information." In a civil case, the taxpayer's constitutional

rights are safeguarded in a summons enforcement proceeding. *See* 26 U.S.C. §§ 7402(b) and 7604. No constitutional abridgement need go unremedied.

Congress has explicitly commanded that taxpayers are not to interfere with the normal information-gathering process of the IRS until either a summons enforcement proceeding or a refund suit in a civil case, or a suppression hearing in a criminal case. It is not for this court to manufacture an exception that ignores the clearly enunciated and fair procedures set out by Congress. For these reasons, the Anti-Injunction Act should be applied in this case. The IRS is conducting its investigation in order to determine the tax liability of Linn and/or his corporation. The summons directing the production of documents is part of the normal information-gathering process of the IRS fully within the scope of the Anti-Injunction Act.

### III

The following scheme seems to me to be preferable to that adopted by the majority. First, the district court should determine whether it has federal question jurisdiction under 28 U.S.C. § 1331. Here, it has. Second, the court should apply the Anti-Injunction Act. Third, the court should determine whether the *Enochs* exception, discussed below, applies. If the exception does not apply, the court lacks jurisdiction and should dismiss the case. If it does apply, the court should assume jurisdiction.

Despite the normally broad reach of the Anti-Injunction Act, the Supreme Court has fashioned an exception to the Act that permits actions for injunctive relief in circumstances which do not undermine the Act's purposes. The limits of the exception were defined in *Enochs v. Williams Packing & Navigation Co.,* 370 U.S. 1, 82 S.Ct. 1125, 8 L.Ed.2d 292 (1962).[1] First, it must be clear

---

**1.** *Enochs* represents the culmination of a turbulent, somewhat inconsistent history of interpretation of the Act by the Supreme Court. The case immediately preceding *Enochs* was *Miller v. Standard Nut Margarine Co.,* 284 U.S. 498, 52 S.Ct. 260, 76 L.Ed. 422 (1932). In *Miller,* the

Court ruled that "extraordinary and exceptional circumstances" could render the Act's provisions inapplicable. *Miller* at 509, 52 S.Ct. at 263. Under the interpretation adopted in *Miller,* the Act demanded nothing more than equity doctrine had demanded before the Act's pas-

that under no circumstances could the government ultimately prevail. "Only if it is apparent that, under the most liberal view of the law and the facts, the United States cannot establish its claim, may the suit for an injunction be maintained." *Id.* at 7, 82 S.Ct. at 1129. Second, equity jurisdiction must otherwise exist. The taxpayer must prove that he will suffer irreparable injury for which no legal remedy is adequate. *Id.* If both prongs of the *Enochs* test are met, then despite the Anti-Injunction Act, the court may grant the taxpayer injunctive relief. *See C.I.R. v. Shapiro,* 424 U.S. 614, 627, 629, 96 S.Ct. 1062, 1070, 1071, 47 L.Ed.2d 278 (1976); *Rich* at 1230–31; *Kemlon Products & Development Co.* at 1321.[2]

It remains to be determined whether Linn has successfully proven his entitlement to injunctive relief under the *Enochs* exception. To satisfy the first prong of the test, Linn must prove that under no circumstances can the IRS prevail in this action. In *Mason v. Pulliam,* 557 F.2d 426 (5th Cir.1977), the taxpayer voluntarily complied with an IRS request to produce documents. Within a week, the taxpayer changed his mind and demanded that the IRS return his documents. When the IRS refused, the taxpayer brought an action requesting the district court to order a return of the documents. The district court granted the relief and this court affirmed. We held that, when the basis for a search or seizure is consent, the government must conform to the limitations placed upon the right to search or seize by the taxpayer. Unless there is an agreement as to the duration of the search, the taxpayer retains the right to withdraw his consent and reinvoke his constitutional rights. *Id.* at 429. In so holding, we rejected the government's argu-

ment that, once the taxpayer voluntarily hands over the materials, he forever waives his fourth and fifth amendment rights with respect to those materials. *Id.* at 428. *Accord United States v. Ward,* 576 F.2d 243 (9th Cir.1978).

The facts in this case are strikingly similar to those in *Mason.* Linn, through his attorney, voluntarily handed over several documents to agent Wigginton. Within an hour, the attorney realized that a mistake had been made. He called Wigginton, wrote her a letter, and appeared personally to inform Wigginton that the consent, admittedly given, was withdrawn as to Linn's personal records. Wigginton refused to return the documents. *Mason* teaches that, by doing so, Wigginton went beyond the scope of Linn's consent to search and in the process, violated Linn's constitutionally guaranteed rights.

The IRS attempts to distinguish *Mason* by pointing out that Linn's production of documents was in response to a summons, whereas in *Mason,* there was no summons. I view this basis for distinction as illusory. An IRS summons does not compel an unwilling taxpayer to produce documents without court intervention. 26 U.S.C. §§ 7402(b) and 7604; *Rich* at 1232. Linn's voluntary compliance with the nonbinding summons and abandonment of his legal remedy under 26 U.S.C. § 7604 amounted to a consent to seize and search his documents. Under *Mason,* he was entitled to withdraw that consent. When he did so, the IRS was obligated to stop the search.

The IRS argues that *United States v. Ponder,* 444 F.2d 816 (5th Cir.), *cert. denied,* 405 U.S. 918, 92 S.Ct. 944, 30 L.Ed.2d 788 (1971) is closer to the mark than *Mason.* I disagree. In *Ponder,* we rejected a taxpay-

---

sage. *Miller* effectively repealed the Act. The Court in *Enochs* severely limited the potential reach of *Miller,* and reaffirmed the strict interpretation of the Act that had generally obtained prior to that case. *See Bob Jones University v. Simon,* 416 U.S. 725, 742–46, 94 S.Ct. 2038, 2048–50, 40 L.Ed.2d 496 (1974) for a succinct discussion of how the Supreme Court caselaw developed prior to *Enochs.*

2. *See also McCabe v. Alexander,* 526 F.2d 963, 965 (5th Cir.1976); *Lange v. Phinney,* 507 F.2d 1000, 1003 (5th Cir.1975); *Lucia v. United States,* 474 F.2d 565, 568 (5th Cir.1973) (en banc); *Crenshaw County Private School Foundation v. Connally,* 474 F.2d 1185 (5th Cir. 1973); *United States v. Doyal,* 462 F.2d 1357, 1358 (5th Cir.1972); *Bowers v. United States,* 423 F.2d 1207, 1208 (5th Cir.1970).

er's attempt to withdraw his consent. But we expressly refused to consider what that taxpayer's position would have been had he demanded the return of his records for the declared purpose of protecting his constitutional rights. *Id.* at 820 n. 5A. Yet that is precisely Linn's declared purpose here. *Ponder* is not on point.

Linn has shown that, because of our holding in *Mason,* the claims of the IRS have no chance of success. Thus, the first prong of the *Enochs* test has been satisfied. But in order to recover, Linn must also prove that any legal remedies he may have are inadequate to repair the injury that might be caused by the government's action.

Linn is currently under investigation by a federal grand jury. Several of his associates have been served with subpoenas to appear before that body. The investigation is being conducted by the Criminal Division of the IRS. It is apparently part of a larger investigation denominated "Narcotics Project P72624." Linn has a reasonable basis to believe that he will be indicted on criminal charges in the near future. The disputed documents could prove to be a determinative factor if the IRS is permitted to use them.

The IRS argues that only a *wrongful* indictment causes irreparable harm. This argument has been put to rest in prior cases. In *Hunsucker,* we said that a criminal indictment carries a danger of stigmatization that is not removed by a determination in the criminal trial that the evidence on which the indictment is based was inadmissible. *Id.* at 33. *See also Richey* at 1243 n. 10 (quoting *In re Fried,* 161 F.2d 453, 458–59 (2d Cir.), *cert. denied,* 332 U.S. 807, 68 S.Ct. 106, 92 L.Ed. 385 (1947)). The possible use of the disputed documents in securing an indictment constitutes a "likelihood of substantial and immediate irreparable injury" for which Linn has no effective legal remedy. *City of Los Angeles v. Lyons,* —— U.S. ——, ——, 103 S.Ct. 1660, 1670, 75 L.Ed.2d 675 (1983). *See also Richey* at 1244 n. 11 (inadequacy of exclusionary rule). Therefore, the second, as well as the first prong of the *Enochs* test has been

satisfied. With deference to the majority's contrary note, I perceive that neither determination requires the court to decide the merits of whether (1) Linn owes any tax, (2) the records are corporate or personal, or (3) the summons is valid. Because Linn's claim falls within the *Enochs* exception, it is not barred by the Anti-Injunction Act.

IV

Despite my disagreement with the majority's reasoning, I agree with its conclusion that the district court erred in dismissing for lack of jurisdiction. I believe we also agree that it is not necessary for the IRS to actually hand over physical possession of the disputed documents. That clearly is my view. It is imperative, however, that the IRS prove its right to retain possession of the documents and any copies thereof. As indicated by the majority, the proper vehicle for this proof is a summons enforcement proceeding. In that proceeding, the IRS may attempt to show that the disputed documents are indeed corporate and covered by the summons. Linn may choose to argue, among other things, that the records are not corporate, or that the summons was issued in bad faith. *See generally United States v. Rylander,* —— U.S. ——, —— ——, 103 S.Ct. 1548, 1551–54, 75 L.Ed.2d 521 (1983); *United States v. LaSalle National Bank,* 437 U.S. 298, 318, 98 S.Ct. 2357, 2368, 57 L.Ed.2d 221 (1978); *United States v. Powell,* 379 U.S. 48, 57–58, 85 S.Ct. 248, 254–55, 13 L.Ed.2d 112 (1964). Finally, I agree that, because the district court dismissed for lack of jurisdiction and, as a result, did not decide the merits of these substantive claims, it would be inappropriate for us to do so at this time.