**UNITED STATES of America,
Plaintiff-Appellee,**

v.

**Leslie B. PONDER, Jr., Defendant-
Appellant.**

**No. 29385.**

United States Court of Appeals,
Fifth Circuit.

June 28, 1971.

Rehearing and Rehearing En Banc
Denied Sept. 29, 1971.

---

J. Lynn Ponder, Amite, La., DeQuincy V. Sutton, Meridian, Miss., for defendant-appellant.

Gerald J. Gallinghouse, U. S. Atty., E.D. of La., Richard M. Olsen, Asst. U. S. Atty., New Orleans, La. (Douglas R. Fortney, Richard D. Ames, Dallas, Tex., Attys. Regional Counsel I. R. S., on brief), for plaintiff-appellee.

Before JOHN R. BROWN, Chief Judge, WISDOM and RONEY, Circuit Judges.

RONEY, Circuit Judge:

The defendant appeals a two count jury conviction for making false income tax returns for the years 1960 and 1961 in violation of Title 26, United States Code, Section 7206(1).[1] The trial lasted seven weeks, involved 160 witnesses, and some 600 pieces of documentary evidence received or identified.

This appeal raises constitutional questions concerning the use of defendant's records and the composition of the grand jury, and trial questions concerning the court's instructions, the sufficiency of the evidence, the admission of evidence, and a statute of limitations defense to the 1960 return count. We reject all of the claims of error and affirm.

Defendant Ponder is an attorney at Amite, in Tangipahoa Parish, Louisiana. During the indictment yea.꞉ he also owned and operated a small hotel in Amite, held various corporation ownership interests and directorships, and participated, either through joint ventures or separately, in other business operations and sales of capital assets or collections of installment payments from such sales in prior years. His return was separate from that of his wife for each indictment year. The indictment alleged underreporting of 1960 law business income and director's fees, and 1961 law business income, director's fees and interest income.[2]

## I. Use of Defendant's Records

The trial court denied motions by which defendant sought to suppress all evidence obtained or derived out of leads from certain of his business and financial records because of alleged violations of his rights under the Fourth (search and seizure) and Fifth (self-incrimination) Amendments to the United States Constitution.

The records in question were voluntarily submitted to the Internal Revenue Service during a civil audit.[3] Taxpayer contends that when he wrote and requested their return, the civil audit terminated, a criminal investigation was commenced, and his records were then copied in violation of his constitutional rights.[4] He reasons that such copying of his records was an illegal search and seizure, and that their use in evidence was compelled self-incrimination. He argues that the Service was under "a duty to advise of the change in status to that of a criminal case."

 We hold otherwise. Ponder agreed to supply the records requested and voluntarily delivered them to the revenue agents. At that point there was a valid consent to a search, which carries with it the right to examine and photocopy. McGarry v. Riley, 363 F.2d 421 (1st Cir. 1966), cert. den., 385 U.S. 969, 87 S.Ct. 502, 17 L.Ed.2d 433 (1966); Boren v. Tucker, 239 F.2d 767 (9th Cir.

---

1. § 7206. Fraud and false statements.
 Any person who—
 (1) Declaration under penalties of perjury.—Willfully makes and subscribes any return, statement, or other document, which contains or is verified by a written declaration that it is made under the penalties of perjury, and which he does not believe to be true and correct as to every material matter; * * * shall be guilty of a felony and, upon conviction thereof, shall be fined not more than $5,000, or imprisoned not more than 3 years, or both, together with the costs of prosecution.

2. The government claimed that the evidence shows defendant under-reporting his 1960 law business income by $12,358.-95, and his director fees by $600.00, and

under-reporting his 1961 law business income by $11,580.80, his interest by $1,-160.40, and his director fees by $1,000.00.

3. The records consisted of a "Receipts Book" which was photocopied, admitted in evidence, and its contents used against Ponder; and numerous deposit records shown on check stubs giving names of those who paid him and amounts of settlements on claims of clients, not introduced in evidence, but which were used as sources for leads.

4. Although the District Court found that the criminal investigation did not actually begin until after the records had already been copied by the civil division, it is unimportant to the result whether the records were copied for civil or criminal usage.

1956). Likewise there had been a waiver of the constitutional right against self-incrimination. The Fifth Amendment right not "to be compelled in any criminal case to be a witness against" one's self protects against compulsion and not voluntary acts, and must be asserted by refusing to deliver records in a case such as this. Hanson v. United States, 186 F. 2d 61 (8th Cir. 1950). After the government obtained possession of the information with his consent, it was too late for Ponder then to claim constitutional immunity. Nicola v. United States, 72 F.2d 780 (3rd Cir. 1934). There is no doubt that the government can use information legitimately obtained during a civil audit in the prosecution of a criminal case. Donaldson v. United States, 400 U.S. 517, 91 S.Ct. 534, 27 L.Ed.2d 580 (1971); Venn v. United States, 400 F.2d 207 (5th Cir. 1968).

Two recent decisions by this Court deal directly with the argument that the Internal Revenue Service owed a duty to advise Ponder that the government was investigating the possible criminal implications in his returns. United States v. Prudden, 424 F.2d 1021 (5th Cir. 1970), cert. den., 400 U.S. 831, 91 S.Ct. 62, 27 L.Ed.2d 62, and United States v. Tonahill, 430 F.2d 1042 (5th Cir. 1970), cert. den., 400 U.S. 943, 91 S.Ct. 242, 27 L.Ed.2d 247.

In *Prudden*, the revenue agent was conducting a civil audit of defendant's return. Finding indications of fraud, he referred the matter to the Intelligence Division. However, he continued his examination and requested further information from the defendant. Thereafter, he advised the defendant that he was being transferred and that another revenue agent would continue. The succeeding revenue agent appeared on the scene with a special agent of the Intelligence Division, who was identified as such. The two agents told the defendant they were examining his returns, but never told him that a criminal investigation was in progress and never advised him of his constitutional rights. The District Court suppressed all evidence obtained following the referral to the Intelligence Division. This Court reversed.

Similarly, *Tonahill* involved a referral to the Intelligence Division after a civil audit. There, following the appearance of a special agent, along with the original revenue agent, the defendant inquired of the agents why the examination was taking so long and whether fraud was involved. The agents did not advise the defendant whether fraud or a crime was involved, but stated that they were attempting to reconcile large discrepancies to see if they were the result of innocent errors. In reliance upon *Prudden*, this Court reversed the granting of a motion to suppress.

Thus *Prudden* and *Tonahill* hold that evidence received from the taxpayer after the criminal investigation commenced is admissible, even though no notice or *Miranda* warnings were given. A fortiori the evidence received from Ponder before the criminal investigation commenced is not rendered inadmissible merely because it was copied thereafter.

These cases recognize that evidence obtained for criminal use by deceit, fraud and misrepresentation might be suppressed, but held that failure to advise the taxpayer that a criminal investigation was being made did not amount to such conduct. Ponder argues that after his demand, the government's letter answer and the retention of the records practiced fraud, misrepresentation and deceit against him. The exchange of letters provide insufficient basis for such an argument, and certainly furnish no ground for upsetting the finding of the District Court that "there is not the slightest hint of any overbearing threat, trickery, or deception on the government's part." [5] Such findings

5. June 28, 1963
Mr. Wiltenmuth & Mr. Peter
Internal Revenue Service
301 American Bank Building
Baton Rouge, Louisiana

Dear Messrs. Wiltenmuth & Peter:
 Please return my 1961 records because I need them in business. We have several references to run down that we have held up that we must close out soon, so

are conclusive on this Court unless clearly erroneous. United States v. Montos, 421 F.2d 215 (5th Cir. 1970), cert. den., 397 U.S. 1022, 90 S.Ct. 1262, 25 L.Ed.2d 532 (1970).

■ The question remains as to whether or not by retaining Ponder's records after he had demanded their return, the government converted a reasonable search into an unreasonable one, and compelled the defendant to give evidence that could not be obtained over objection under Stuart v. United States, 416 F.2d 459 (5th Cir. 1969). We held there that a taxpayer can successfully resist the production of records on Fifth Amendment grounds when the investigation has become an inquiry with dominant criminal overtones, even though the records had previously been examined by the government.

We hold that Ponder's demand for the return of his records did not transform to compulsion an otherwise voluntary submission to the Internal Revenue Service, and did not make the continued examination of the records an unreasonable search. That no such metamorphosis took place is readily apparent for several reasons.

First, the demand for return did not assert a constitutional basis, but on the other hand indicated that the defendant needed the records for business reasons. It placed no restriction on the use of the records by the government.

Second, as an experienced businessman and as a lawyer, Ponder was bound to be aware that any civil investigation could lead to criminal charges if the inquiry revealed wrongdoing and that any records he gave to the government which evidenced criminal activity might be used against him. Cf., United States v. Prudden, *supra*, and United States v. Tonahill, *supra*.

■ Third, once having voluntarily submitted records in response to a summons, it is only reasonable to assume that the government would conclude its examination and copy such records prior to return, even after a demand, and that it should have a reasonable time to do so. Glotzbach v. Klavans, 196 F.Supp. 685 (E.D.Va.1961), order vacated, 11 AFTR 2d 1191, 62–2 U.S.T.C. Par. 15,-452 (4th Cir. 1962); Caro v. Bingler, 242 F.Supp. 418 (W.D.Pa.1965).[5A]

would appreciate your returning them as soon as possible.
> Yours very truly,
> L. B. Ponder, Jr.

LBP:bs

U. S. TREASURY DEPARTMENT
Internal Revenue Service
Office of the District Director
3954 Florida Boulevard
Baton Rouge, Louisiana
July 2, 1963

Mr. L. B. Ponder, Jr.
P. O. Box 217
Amite, Louisiana
Dear Mr. Ponder:

We are trying to return your 1961 records to you as quickly as we can. However, we need them for a little while longer.

Just as soon as we can we'll get them back to you.
> Sincerely,
> /s/ John P. Wiltenmuth, Jr.
> John P. Wiltenmuth, Jr.
> Group Supervisor, Group 5
> July 3, 1963

Mr. John B. Wiltenmuth, Jr.
U. S. Treasury Department

Internal Revenue Service
3954 Florida Boulevard
Baton Rouge, Louisiana
Dear Mr. Wiltenmuth:

I have your letter of July 2, 1963 regarding the return of my 1961 records.

I have tried to cooperate with you fellows and gave you these records March 29, 1963 which I think is more than a reasonable length of time for you to keep the records and I must insist upon their return.

This will be the only month of the year that I will be out of Court long enough to check out some payments that I can only do through my check, hence will appreciate the return of my records immediately.
> Your very truly,
> L. B. Ponder, Jr.

LBP/mr

**5A.** We need not consider what Ponder's position would have been if he had demanded the return of his records for the declared purpose of protecting his constitutional rights.

## II. Grand Jury

The defendant attacks the indictment on the ground that the grand jury which returned it was drawn from an improper list.[6] The contention that the list excluded persons from some of the 12 parishes in the Division is defeated by § 1865(a) of Title 28, United States Code, which specifically authorizes the court to select the jurors from parts of a district.[7] This section, which descended from the original Judiciary Act of 1789, has been held constitutional repeatedly. Lewis v. United States, 279 U. S. 63, 49 S.Ct. 257, 73 L.Ed. 615 (1929); Ruthenberg v. United States, 245 U.S. 480, 38 S.Ct. 168, 62 L.Ed. 414 (1918).

As to the composition of the grand jury, defendant's evidence fails to support the contention that the jury list did not represent the community,[8] or that the order of the District Court under Section 1865 was not followed. Jackson v. Morrow, 404 F.2d 903 (5th Cir. 1968); Bloomer v. United States, 409 F.2d 869 (9th Cir. 1969); United States v. Skidmore, 123 F.2d 604 (7th Cir. 1941), cert. den., 315 U.S. 800, 62 S.Ct. 626, 86 L.Ed. 1201 (1942).

"The focus of the law is on the list from which the jury is drawn and not on the composition of a particular jury or grand jury." Rabinowitz v. United States, 366 F.2d 34, 59 (5th Cir. 1966).

The fact that defendant's home parish was not included does not render the list improper. Lewis v. United States, *supra*; Agnew v. United States, 165 U.S. 36, 17 S.Ct. 235, 41 L.Ed. 624 (1897).

As stated by Judge Learned Hand:
"The statute confers a power which, like any other power, the court need, and indeed can, use only with approximate exactness; it is engaged, not in a scholastic exercise, but in the practical administration of justice." United ed States v. Gottfried, 165 F.2d 360 (2d Cir. 1948), cert. den., 333 U.S. 860, 68 S.Ct. 738, 92 L.Ed. 1139 (1948).

Having fully considered each of the defendant's objections to the grand jury, we find no error in the District Court's denial of the motion to dismiss the indictment.[9]

## III. Instructions

Defendant objected to certain of the instructions as given by the trial court on the various grounds that they gave the jury an instruction that the prosecution evidence was assumed to be correct; that they gave to defendant the burden of proving his innocence; that they did

6. Defendant was indicted on December 5, 1967, prior to the Jury Selection and Service Act of 1968, 28 U.S.C. § 1861, et seq.

7. § 1865. *Apportionment within district; additional jury commissioners.* (a) Grand and petit jurors shall from time to time be selected from such parts of the district as the court directs so as to be most favorable to an impartial trial, and not to incur unnecessary expense or unduly burden the citizens of any part of the district with jury service. To this end the court may direct the maintenance of separate jury boxes for some or all of the places for holding court in the district and may appoint a jury commissioner for each such place.

8. At the hearing on the motion to dismiss the indictment, the only evidence offered by the defendant was a Louisiana Governmental Guide showing the population of the various parishes; an order of the District Court of January 20, 1967, providing that jurors would be selected from seven of the parishes in the New Orleans Division; a list of the members of the Grand Jury venire which subsequently indicted the defendant; and a Louisiana Highway map.

9. Ponder was originally indicted on March 30, 1967. On October 11, 1967, the original indictment was dismissed on grounds that the Grand Jury that returned the indictment was improperly constituted. On December 5, 1967, a superseding indictment was returned against Ponder by a new Grand Jury selected after this Court's decision in Rabinowitz v. United States, 366 F.2d 34 (5th Cir. 1966). The order of January 20, 1967, under which this new Grand Jury was constituted was scrutinized by the District Court in United States v. Brown, 281 F. Supp. 31 (E.D.La.1968).

not cover his defense; that they stated the law erroneously; and that they were not in accord with accepted rules as to instructions. Defendant made certain requests for instructions which were refused.

■ Having carefully studied all of the instructions as a whole, we conclude that they fairly instructed the jury on the applicable law and contain no prejudicial error, and that the objections were properly overruled and the requested instructions were properly refused. Zeigler v. Seaboard Coast Line R. Co., 437 F.2d 80 (5th Cir. 1971); Knight v. United States, 123 F.2d 959 (5th Cir. 1941).

IV. Motion for Judgment of Acquittal

The defendant contends that the Court should have granted a judgment of acquittal for lack of proof that the returns were signed by the defendant, or authorized to be signed on his behalf.

■ Although the defendant urges that this matter must be considered as the evidence stood at the time that the government rested its case in chief, this is clearly not the law. When a defendant introduces evidence after a denial of a motion for acquittal at the close of the government's case, the reviewing court should consider the entire record, including defendant's evidence. United States v. Cashio, 420 F.2d 1132 (5th Cir. 1970), cert. den., 397 U.S. 1007, 90 S.Ct. 1234, 25 L.Ed.2d 420 (1970). The Cashio case also decided that the statutory presumption that an individual's name signed to a return furnishes prima facie evidence that the document was signed by him is sufficient to preclude a judgment of acquittal at the close of the government's case. 26 U.S.C. § 6064.

The defendant's secretary, Mrs. Smith, testified for the defendant that the defendant signed the 1960 return, but that she had signed his name to the 1961 return. She further testified that she had prepared the 1961 return and that it was first submitted to the Internal Revenue Service unsigned. It was sent back to be executed. After two or three weeks, she signed the defendant's name to the return and sent it in, but claims that at no time did she show the return to the defendant and that he did not authorize her to sign it.

■ Taking the view of the evidence most favorable to the government, Glasser v. United States, 315 U.S. 60, 80, 62 S.Ct. 457, 86 L.Ed. 680 (1942), there are sufficient circumstances present from which a reasonable jury could find that the defendant did authorize the filing of the return with his name subscribed to it. The returns were prepared in the defendant's law office by the defendant's secretary from the defendant's records over a period of weeks. The return involved a number of extraordinary items. It was signed under a declaration that the penalties of perjury applied to the return. The defendant had been under previous scrutiny of the Internal Revenue Service, and the jury might well have believed that Mrs. Smith would not have signed the return without authority and the defendant would not let tax time come and go without either making and filing his own return or authorizing someone to do it for him.

We conclude there was sufficient evidence from which the jury could connect the defendant with the preparation of the return for 1961. United States v. Barnes, 313 F.2d 325 (6th Cir. 1963).

V. Statute of Limitations

■ Defendant seeks reversal of the conviction as to the 1960 return on the ground that the prosecution was barred by the six year statute of limitations.

The first indictment brought within the six year period was dismissed on October 11, 1967, because of an improperly constituted grand jury. By that time, the six year period had expired, but within six months of the dismissal a new indictment was returned on December 3, 1967.

18 U.S.C. § 3288 presents a complete answer to the statute of limitations de-

fense.[10] The express purpose of Section 3288 is to extend the statute of limitations as to a person who has been charged under an indictment which "is dismissed for any error, defect or irregularity with respect to the grand jury."

The argument that the grand jury was "void" and its actions beyond redemption does not advance the defendant past Section 3288. Using the defendant's concept, the first indictment was at most "voidable," because any defects would have been waived unless timely presented. Therefore such defects are not jurisdictional. Rule 12(b)(2), Federal Rules of Criminal Procedure; Shotwell Mfg. Co. v. United States, 371 U.S. 341, 362, 83 S.Ct. 448, 9 L.Ed. 2d 357 (1963).

The instant situation is exactly the kind of case to which 18 U.S.C. § 3288 was intended to apply and prosecution was not barred.

## VI. Admission of Evidence and Other Points on Appeal

Defendant appeals several rulings of the Court admitting evidence over objection and denying the admission of evidence he sought to introduce. He cites

conduct of the Court which he deems prejudicial to his case. As to all of these issues not previously discussed, we find no reversible error and none which merit discussion.

The trial lasted seven weeks. A significant portion of the transcript of the proceedings is before this Court. It has all been read, the arguments of counsel have been carefully considered, and viewing the case as a whole, it appears from this review that the defendant had a fair trial and that his convictions must be sustained on this appeal.

Affirmed.

## ON PETITION FOR REHEARING AND PETITION FOR REHEARING EN BANC

PER CURIAM:

The Petition for Rehearing is denied and no member of this panel nor Judge in regular active service on the Court having requested that the Court be polled on rehearing en banc, (Rule 35 Federal Rules of Appellate Procedure; Local Fifth Circuit Rule 12) the Petition for Rehearing En Banc is denied.

10. 18 U.S.C. § 3288 states that: "Whenever an indictment is dismissed for any error, defect, or irregularity with respect to the grand jury, or an indictment or information filed after the defendant waives in open court prosecution by indictment is found otherwise defective or insufficient for any cause, after the period prescribed by the applicable statute of limitations has expired, a new indictment may be returned in the appropriate jurisdiction within six calendar months of the date of the dismissal of the indictment or information, or, if no regular grand jury is in session in the appropriate jurisdiction when the indictment or information is dismissed, within six calendar months of the date when the next regular grand jury is convened, which new indictment shall not be barred by any statute of limitations."