**James M. KELLEY**

v.

**Jerry GODBOUT and Dean Kinsey.**

**Civ. A. No. 74-1302A.**

United States District Court,
N. D. Georgia,
Atlanta Division.

Aug. 12, 1974.

· Stanley F. Birch, Jr., Greer, Sartain & Carey, Gainesville, Ga., for petitioner.

John P. Hines, Trial Atty., TaxDiv., Dept. of Justice, Washington, D. C., for respondent.

## ORDER

RICHARD C. FREEMAN, District Judge.

This is an action to compel agents of the Internal Revenue Service to return certain books and records belonging to plaintiff. This court previously ordered defendants to turn over the records in question to the Clerk of the Court pending resolution of the issues raised by this action and prohibited duplication of the records. Kelley v. Godbout, Civil Action No. 74–1302A (N.D.Ga., June 28, 1974). At that time the court specifically reserved decision on questions relating to custody of photocopies of these records which might have been made between the time plaintiff's counsel demanded return of the records at 11:05 A.M., June 28, 1974, and the time of the order prohibiting further copying or duplication of the records. Apparently the records were copied during this period; therefore plaintiff has moved to amend the prior order to include the copies made during the time period in question. Plaintiff also seeks to amend his complaint to include a request for costs and attorney's fees. Defendant has moved this court to dismiss this action on the basis of sovereign immunity,

mootness, adequacy of remedy at law, and 26 U.S.C. § 7421(a) and 28 U.S.C. § 2201.

Plaintiff has admitted that he voluntarily relinquished custody of his records to defendants on April 3, 1974. Similarly, plaintiff does not dispute the fact that at the time he relinquished his records he was advised of his rights by means of the *Miranda* warnings. Plaintiff contends, however, that, assuming he validly waived his Fourth and Fifth Amendment rights when he relinquished the records, he revoked that waiver when he demanded return of the records. In addition to possible Fourth or Fifth Amendment violations resulting from photocopying the records after the demand, plaintiff asserts that defendants have deprived him of his property rights in the records themselves. Plaintiff seems to be asserting that both the records and the copies of the records are his property and should be returned forthwith.

■ Although plaintiff clearly has a valuable property right in his books and records, his assertion of a similar interest in the copies of those records is more tenuous. His assertion may be essential to this action in that defendants have agreed to return the original books and records, thus fulfilling their "duty" in that regard and rendering plaintiff's request for mandamus relief moot. If plaintiff is unable to assert a property right in the copies, defendants would not be under a corresponding "duty" to return them and mandamus relief would be inappropriate. See 28 U.S.C. § 1361. However the court is reluctant to rely upon arguments concerning fictional property concepts; for, as the Supreme Court has indicated, when constitutional rights have been violated, remedies for that violation are not dependent upon fictionalized distinctions. *See* Warden v. Hayden, 387 U.S. 294, 304–305, 87 S.Ct. 1642, 18 L.Ed.2d 782 (1957). The proper inquiry in such contexts is the propriety of granting the relief requested in light of available alternative remedies.

■ Although the more recent decisions have not examined the propriety of granting mandamus relief where the retention of arguably illegally seized evidence or copies of such evidence is in issue, at least one earlier case specifically denied similar relief on the ground of an insufficient property interest and because such relief would be an inappropriate attempt by a court of equity to pass on the admissibility of evidence in a criminal case. *See* Eastus v. Bradshaw, 94 F.2d 788 (5th Cir. 1938). More recently, several courts have faced issues relating to enjoining the use of tax records or information derived therefrom in subsequent criminal or civil proceedings. These courts have generally refused relief, noting that issuance of an injunction would be an impermissible attempt to obtain a premature ruling on the legality of the government's conduct with respect to the evidence in question. *See* Meister v. United States, 397 F.2d 268 (3rd Cir. 1968); Richey v. Smith, 33 Am.Fed.Tax R.2d 74–1323 (E.D.Tex. 1974), appeal docketed, No. 74–2174, 5th Cir., May 5, 1974; Odom v. United States, 33 Am.Fed.Tax R. 73–5910 (S.D. Ga.1973). Equitable relief is inappropriate in such contexts because of the adequacy of a remedy at law pursuant to Rule 41(e), Fed.R.Crim.P., in the event criminal proceedings are ever commenced.

In the *Odom* case, *supra,* the plaintiff's records had been voluntarily relinquished after defendant Internal Revenue agents had advised plaintiff of his constitutional rights. Plaintiff apparently reconsidered his actions and demanded the return of the records the next day. The records were not returned until the agents completed copying them ten days later. In reaching his decision, Judge Lawrence noted that the Court of Appeals for the Fifth Circuit had stated that a valid consent to a search [review] of tax records carries with it the right to examine and photocopy them. *See* United States v. Ponder, 444 F.2d 816 (5th Cir. 1971). However, the problem in *Odom* was that the plain-

tiff alleged that he relinquished the records on the condition that they would be promptly returned on request. As a result, he argued that on failure to return the records as requested, further possession thereof by defendants became illegal. Presumably, copies obtained while possession of the originals was illegal would be tainted by this illegality, if any, and be excluded from evidence in any subsequent criminal trial.[1] Judge Lawrence did not need to resolve this issue because he concluded that the action was inappropriate for decision and should be dismissed without prejudice to the right to move for suppression of the copies after the commencement of criminal proceedings. Similarly, in Richey v. Smith, *supra*, the court declined to enjoin defendant revenue agents from copying plaintiff's records, concluding that such an injunction would be a "premature attempt to suppress evidence and should be dismissed as lacking in equity because of the existence of an adequate remedy at law in the form of a Rule 41 (e) proceeding . . . in the event a criminal case results."

The opinions in *Richey* and *Odom* are persuasive with respect to this action. As noted above, plaintiff voluntarily relinquished his records pursuant to a legal request by defendant investigatory officers. Although plaintiff argues that the proper means to secure such records is by use of a subpoena secured pursuant to 26 U.S.C. § 7602, he does not contend that he would not have voluntarily relinquished the documents if faced with such a subpoena, rather than compelling a judicial enforcement proceeding.[2] *See* 26 U.S.C. § 7604. Similarly, plaintiff does not contend that he did not validly waive his Fourth and Fifth Amendment rights when he initially relinquished the records. As United States v. Ponder, *supra*, indicates, Fifth Amendment rights in business records should be asserted by refusal to deliver the records rather than by subsequently revoking that delivery and demanding their return:

> [O]nce having voluntarily submitted records in response to a summons, it is only reasonable to assume that the government would conclude its examination and copy such records prior to return, even after a demand, and that it should have a reasonable time to do so.[3]

444 F.2d at 820. This language would seem to be equally applicable whether the records were voluntarily relinquished in the face of a legal summons as in *Ponder*, or voluntarily relinquished pursuant to a request by an investigating officer. Even if plaintiff were able to introduce sufficient evidence to show that the records were obtained through fraud or artifice, thereby invalidating his pur-

---

1. *Cf.* United States v. Ponder, *supra*. The *Ponder* court held that the demand of the defendant for return of his records did not convert an otherwise valid search into an unreasonable search thereby rendering copies of the records made after the demand inadmissible. *Id.* 444 F.2d at 820; *see* text accompanying note 3 *infra*. However, the court noted that incriminating evidence initially obtained by "deceit, fraud and misrepresentation" might be suppressed. *Id.* at 819.

2. In fact, plaintiff indicates in his brief that the more informal procedure utilized by defendants was preferable to an official subpoena: "Plaintiff willingly tendered [his records] in the hope and expectation that these agents would not subpoena this data from Plaintiff's banks, thereby causing him embarrassment and endangering his credit position."

3. Defendants have argued in their brief that this language should be interpreted as follows: [B]ooks and records unlike oral testimony speak for themselves. Thus once the books and records are voluntarily relinquished the entire contents are subject to examination. The language of the Miranda Warnings allows one to stop the oral questioning, but does not permit one to retract that which has been previously given.

Because of the disposition of this action, a ruling on this argument is inappropriate at this time. Similarly, the court does not express any opinion on the question of whether defendants alleged promise to return the records "within a few weeks" precluded further examination or copying of the records following plaintiff's demand for return of the records over two months later.

ported waiver of constitutional rights, such allegations are more properly raised at a suppression hearing rather than in an action for mandamus and injunctive relief.

 The reluctance of most courts to issue anticipatory relief in the nature of a request for suppression of evidence relates to the desirability of letting the administrative process run its course, particularly when a matter is merely at the investigatory stage. If the evidence in question were solely to be used in a civil action, suppressing such evidence by injunction would run afoul of the clearly expressed congressional policy that courts should not intervene in the tax collection process. *See* Brittingham v. Commissioner of Internal Revenue, 451 F.2d 315 (5th Cir. 1971); 26 U.S. C. § 7421. Even where proceedings are criminal in nature, a recent Supreme Court decision has expressed a general reluctance to apply the exclusionary rule to investigatory activities. *See* United States v. Calandra, 414 U.S. 338, 94 S.Ct. 613, 38 L.Ed.2d 561 (1974). This decision, taken in conjunction with the recent tax record cases, indicates that Fourth Amendment claims should not be used to prevent investigative institutions from determining whether there is cause to believe that violations of the law have occurred.[4]

In light of the authorities cited, this court finds that mandamus or injunctive relief is inappropriate at this stage of the tax collection and investigation process. Accordingly, plaintiff's motions to amend the complaint and the prior order of the court are denied, and defendants' motion to dismiss is granted without prejudice to plaintiff's right to move to suppress evidence acquired, or tainted, by any illegal activity by defendants in the event criminal proceedings are eventually commenced. The Clerk is directed

to deliver all original records and documents pertaining to this action which are now in his custody to plaintiff.

It is so ordered.

---

4. Although the *Calandra* decision involved questioning before the Grand Jury rather than an administrative tax investigation, the Fifth Circuit Court has previously construed the investigatory power of the Commissioner of Internal Revenue as an "inquisitorial power, analogous to that of the grand jury and one which should be liberally construed." United States v. McKay, 372 F.2d 174 (5th Cir. 1967).