**UNITED STATES of America, Plaintiff,**

v.

**John R. LYTLE, et al., Defendants.**

**No. 87 CR 135.**

United States District Court,
N.D. Illinois, E.D.

April 15, 1987.

**1322**

Joseph J. Duffy, James R. Ferguson, Asst. U.S. Attys., Chicago, Ill., for plaintiff.

James P. Crowley, James R. Streicker, Matthew F. Kennelly, Chicago, Ill., for Lytle.

Burck Bailey, Warren F. Bickford, IV, Barbara G. Bowersox, Oklahoma City, Okl., for Patterson.

## MEMORANDUM OPINION AND ORDER

SHADUR, District Judge.

This criminal prosecution has shown every sign of being snake-bitten from the very beginning. For a full understanding of the current motions to dismiss certain counts, a brief partial rehearsal of its checkered history is called for.

Originally defendants John Lytle ("Lytle"), William Patterson ("Patterson") and Jere Sturgis ("Sturgis") were indicted September 25, 1984 (in Case No. 84 CR 726), and the case was assigned to the calendar of this Court's colleague Honorable John Grady. After Patterson—seeking dismissal of the indictment on double jeopardy and other grounds—filed a successful appeal to the Seventh Circuit from the denial of that motion (*United States v. Patterson*, 782 F.2d 68 (7th Cir.1986)), the case was remanded to Judge Grady for the further review and consideration mandated by the Court of Appeals.

Before Judge Grady had acted to implement the mandate, he became Chief Judge of our District Court, and the resulting random reassignment of his criminal calendar eventuated in this case being transferred to this Court's calendar. Prompt review of the file disclosed a lurking (and inadvertent) Speedy Trial Act problem that had not been identified by either Judge Grady or the litigants. After the litigants had filed the requested memoranda addressing that subject, this Court found itself compelled to dismiss the indictment on Speedy Trial Act grounds July 17, 1986—but given the unintended nature of the statutory violation, this Court exercised its discretion by ordering that dismissal *without* prejudice rather than *with* prejudice (see 18 U.S.C. § 3162(a)(2)).

On November 24, 1986 a new indictment (86 CR 847) was returned by the Special December 1983 Grand Jury. During the course of the parties' briefing of various motions (including some still carried over from Judge Grady's period as the presiding judge in the case), Patterson's counsel raised a question as to the regularity of that new indictment. Though Patterson's attack was on somewhat different grounds, this Court's own research indicated the litigants had misread the applicable statute. Its February 4, 1987 memorandum opinion and order ("Opinion 1," App. 1 to this opinion) and its supplemental memorandum order of February 18, 1987 ("Opinion 2," App. 2 to this opinion) resulted in the February 18 dismissal of the indictment—again without prejudice—because the 1986 "indictment" had been returned by a grand jury whose term had expired, so that it was no longer authorized to conduct any business.

Nothing daunted, the government has returned to the fray with still another indictment (87 CR 135) returned March 3, 1987—obviously hoping the third time would prove the charm.[1] Now Lytle and Patter-

---

1. Though the government acquiesced in the dismissal of the 1986 indictment and obtained the new 1987 indictment instead, it later obtained from former Chief Judge Frank McGarr a pur-

ported February 21, 1987 nunc pro tunc order regularizing the grand jury's existence during the period in which the 1986 indictment was returned. This opinion later deals with the ef-

son seek dismissal of a number of the counts of the most recent indictment on statute of limitations grounds.[2] To resolve their motion it becomes necessary to deal with issues involving all three indictments.

### Effect of Dismissal of the 1984 Indictment

Even if it were assumed the 1986 indictment was either (1) valid or (2) had some legal effect even though invalid—both subjects dealt with later in this opinion—the fact remains that when it was returned on November 24, 1986, more than five years had elapsed since some of the events it charged as criminal offenses:

| Count Number in 1987 Indictment | Date of Alleged Offense |
| --- | --- |
| Three | April 22, 1981 |
| Four | July 16, 1981 |
| Seven | August 12, 1981 |
| Sixteen | September 30, 1981 |

Lytle and Patterson therefore urge the statute of limitations bars those charges, which have continued in identical form and numbering from the 1986 indictment into the 1987 indictment.

Within a few days after that issue was raised and a briefing schedule had been ordered, this Court wrote a letter to all counsel drawing their attention to the very recent decision by the Court of Appeals for the Ninth Circuit in *United States v. Peloquin*, 810 F.2d 911 (9th Cir.1987), dealing with that identical question and ruling for defendant and against the government. What *Peloquin* said in brief was this:

1. In relevant part, 18 U.S.C. § 3288 ("Section 3288") gives the government the opportunity to reindict a defendant within six months after "an indictment is dismissed for any error, defect, or irregularity with respect to the grand jury, or ... is found otherwise defective or insufficient for any cause, after the period

prescribed by the applicable statute of limitations has expired...." If the *new* indictment is returned in that six-month window period, it "shall not be barred by any statute of limitations."

2. Dismissal of an indictment because a defendant was not brought to trial within the time period mandated by the Speedy Trial Act[3] involves no flaw at all in the *indictment*, but is rather based solely on post-indictment events. That means the indictment itself was not "defective or insufficient" within the language or meaning of Section 3288.

3. That being so, Section 3288 does not come into play to save a new indictment brought after expiration of the statute of limitations. Hence the government does not have a free six months after a Speedy-Trial-Act-triggered dismissal in which it may reinstate the charges. Instead the timeliness of any new indictment must be decided by measuring its date against the date of the alleged offense—without reference to the original indictment at all.

Were this opinion to begin to quote *Peloquin*, it would not know when to stop: It is as though the opinion had been written for this case, and it is really unanswerable in terms of the statutory language and purpose of Section 3288.

■ Hence the *Peloquin* rule (and in this Court's view the correct one) is that the normal statute of limitations rules apply to any new indictment brought after an earlier one has been dismissed for Speedy Trial Act reasons—the date of the offense is compared with the date of the new indictment, and if the intervening time gap exceeds five years, the charged offense is barred by limitations. In response the government points to a series of cases that deal with a very different question: whether a new indictment returned *while an*

---

fect (more precisely, the lack of effect) of the February 21 order.

**2.** When this Court recently appointed William T. Huyck, Esq. to represent Sturgis (whose privately-retained lawyer had withdrawn because of Sturgis' inability to pay the stiff additional fees counsel demanded for further representation), this Court specifically ordered all motions

by any codefendant to stand as Sturgis' motions as well. In this instance, however, the eight counts under attack name only Lytle and Patterson—not Sturgis.

**3.** That was the reason for dismissal of the first indictment in *Peloquin*, just as it was the reason for this Court's July 17, 1986 dismissal of the original 1984 indictment here.

**1324**

*earlier one is pending* (a so-called "superseding" indictment) is timely even though that second grand jury action has taken place more than five years after the event charged. *United States v. Sears, Roebuck & Co.,* 785 F.2d 777, 778–79 (9th Cir.) (per curiam), *cert. denied,* — U.S. —, 107 S.Ct. 580, 93 L.Ed.2d 583 (1986); *United States v. Friedman,* 649 F.2d 199, 203–04 (3d Cir.1981); *United States v. Grady,* 544 F.2d 598, 601 (2d Cir.1976); *United States v. Wilsey,* 458 F.2d 11, 12 (9th Cir. 1972) (per curiam); *United States v. Garcia,* 412 F.2d 999, 1000–01 (10th Cir.1969); *United States v. Chagra,* 638 F.Supp. 1389, 1394–95 (W.D.Tex.1986); *United States v. Drucker,* 453 F.Supp. 741, 742–43 (S.D.N. Y.), *aff'd mem.,* 591 F.2d 1332 (2d Cir. 1978), *cert. denied,* 440 U.S. 963, 99 S.Ct. 1510, 59 L.Ed.2d 778 (1979). Those cases, however, simply cannot carry the baggage the United States seeks to place on their shoulders.

To give the government its due, the discussion in many of those cases does speak of "tolling." And the "tolling" of limitations is a term most often used to express the concept of interrupting the continuous flow of the passage of time, to be resumed afresh once the tolling ends. In that sense, if (say) four years of a five-year limitations period had elapsed before the tolling event occurred, once the tolling has stopped another year would still remain before the statute of limitations would bar bringing the criminal charge—and that would be so whether the tolling period had been a month, a year or even ten years.

But that meaning of "tolling," even if the one most frequently employed, is not the only possible usage of the term. "Tolling" can also describe the concept in which the return of an indictment renders timely any restatement of its charges—the familiar "superseding" indictment[4]—while the earlier indictment is pending. That is certainly the *holding* of every case on which the government now relies, and to ascribe any greater meaning to such cases' use of the word "tolling"—at least in the present context—would impermissibly elevate what is not even dictum to the level of precedential authority.

What the government argues here as a "tolling" approach was also tendered by the government as a "fall back position" in *Peloquin,* 810 F.2d at 913—and it was flatly rejected by the Court of Appeals. Though from the *Peloquin* opinion it does not appear the government argued the same line of cases there as those cited here, it is a bit disingenuous for government counsel here to charge the Ninth Circuit with having "made no effort to address cases in *its own circuit*" (Govt.Mem. 5, emphasis in original)—one of those cases being less than a year old (*Sears, Roebuck*) and the other case being one of the leading cases that spawned its successors (*Wilsey*). It can scarcely be assumed the Court of Appeals was either unaware of or blithely disregarded its own precedents. To the contrary, the obvious reason those cases were not dealt with in *Peloquin* is that they simply do not treat with the same issue that was posed in *Peloquin* and is posed in this case.

Indeed the memorandum filed by Lytle's counsel correctly points out the government's theory proves too much. Section 3288 is one of a pair of statutes—by its terms it applies to dismissals of indictments *"after* the period prescribed by the applicable statute of limitations has expired," while the immediately following provision of 18 U.S.C. § 3289 ("Section 3289") contains an *identical* saving provision for dismissals that occur *"before* the period prescribed by the applicable statute of limitations has expired" but where such expiration will take place within six months after the dismissal. If the government were right in contending that the return of every indictment automatically "tolls" the statute of limitations in the sense of suspending its operation during the entire pendency of that indictment, there could *never* be a

---

4. Though the term "superseding" is nowhere to be found in the statutes, it was certainly legitimized by the Supreme Court's having adopted it in dealing with another Speedy Trial Act provi-

sion in *United States v. Rojas-Contreras,* 474 U.S. 231, 106 S.Ct. 555, 88 L.Ed.2d 537 (1985) (and see Justice Blackmun's concurring opinion, *id.,* 106 S.Ct. at 559).

dismissal "after the period prescribed by the applicable statute of limitations has expired" (the Section 3288 language). That would be so because every timely indictment is necessarily returned (by definition) before the statute of limitations has run, and under the government's theory the claimed "tolling" effect of the indictment itself would prevent any further running of the statute—consequently rendering any dismissal (again by definition) one that must occur before rather than after the limitations period has expired.[5]

Thus on the government's own concept of "tolling," Section 3289 would do the whole job, because under that statute the government would never have less than six months to reindict, and in most instances it would have the entire "unexpired" limitations period (the entire time interval that had not run before the original indictment) available to it. This Court cannot ascribe to Congress the enactment of a totally useless statute, which is what Section 3288 would be under the government's version. Hence the very existence of Section 3288 in the statute books gives the lie to the government's present position.

Case law applying Section 3288 teaches the same lesson. Lytle's Mem. 3 n. 2 is short and persuasive enough to be quoted in full:

Indeed, were the government's suspension theory correct, § 3288 would have been irrelevant to several of the opinions in which it featured prominently. In *United States v. Durkee Famous Foods*, 306 U.S. 68 [59 S.Ct. 456, 83 L.Ed. 492] (1939), the defendant was indicted in April 1934 for an offense committed in August 1932. The indictment was dismissed in February 1937, and the defendant was reindicted in April 1937. The offense carried a 3 year limitations period. According to the government's suspension theory, in April 1937 there would have been one year left in which to rein-

dict. The Court, however, held that the new indictment was time-barred because the government had not complied with the then-existing version of § 3288. It is apparent that neither the Court nor the parties considered remotely plausible the proposition that the statute of limitations had not expired. *See also United States v. DiStefano*, 347 F.Supp. 442, 443–44 (S.D.N.Y.1972); *United States v. Moriarty*, 327 F.Supp. 1045, 1047 (E.D.Wis. 1971).

In sum, the proper rule of law under the circumstances here is what our Court of Appeals has said succinctly in the somewhat different context of the Sixth Amendment's Speedy Trial Clause (*United States v. Samples*, 713 F.2d 298, 301 (7th Cir.1983), quoting from *United States v. MacDonald*, 456 U.S. 1, 10, 102 S.Ct. 1497, 1503, 71 L.Ed.2d 696 (1982)):

Once all counts of the indictment were dismissed, the defendant "was legally and constitutionally in the same posture as though no charges had been made."

More precisely, as *Peloquin* holds, once the 1984 indictment here was dismissed on Speedy Trial Act grounds, the limitations period was to be measured from the dates of the charged acts to the date of the new 1986 indictment. Once the statute had run, it could not be revived by whatever relationship later existed between the 1986 and 1987 indictments. That means Counts Three, Four, Seven and Sixteen must be and are dismissed.[6]

*Validity of the 1986 Indictment*

Nothing in the developments brought to this Court's attention after its issuance of Opinions 1 and 2 alters the conclusion reached there: Simply put, the 1986 "indictment" was an inoperative piece of paper, because the Special December 1983 Grand Jury had not been validly extended when the supposed indictment was returned. Indeed the later-furnished infor-

---

**5.** It may be that government counsel have drawn their inspiration from Zeno's Paradox— the familiar (and fallacious) "proof" that an arrow can never reach its target.

**6.** No ruling is made or implied here as to the possible admissibility into evidence, under Fed. R.Evid. 404(b), of the facts underpinning those now-dismissed counts, to the extent they may be relevant to issues presented by the surviving counts.

mation from government counsel fortifies that result:

1. There was no grand jury appearance before then Chief Judge McGarr to obtain an extension in May 1986, before the then-effective six-month extension had run out.

2. When a grand juror drew the attention of the United States Attorney's office to that oversight, the Assistant United States Attorney in charge of the matter mistakenly relied on the earlier order (prepared by the United States Attorney's office) that had purported to extend the grand jury "until further order of this Court"—and he did nothing about it.[7] As a result, the question was *never* presented to Chief Judge McGarr —until, that is, the entry of a February 21, 1987 nunc pro tunc order (App. 3 to this opinion [8]) that purported to extend that grand jury retrospectively from May 25, 1986 to November 25, 1986.

Fundamental principles of nunc pro tunc ("now for then") orders—something most of us encounter in law school and never have to deal with again—teach that such orders are only a means for regularizing, as a matter of record, court orders that were *in fact* entered in the past but that, due to some clerical oversight, did not find their way onto the docket or other appropriate court record. Nunc pro tunc orders are not some Orwellian vehicle for revisionist history—creating "facts" that never occurred in fact.

Almost exactly a century and a quarter ago, the Supreme Court reconfirmed those basic and time-honored propositions without feeling it even had to cite supporting authority to that end (*Gray v. Brignardel-*

*lo,* 68 U.S. (1 Wall.) 627, 17 L.Ed. 693 (1863)). Something over a decade ago Judge Wisdom restated those principles in *Recile v. Ward,* 496 F.2d 675, 680 (5th Cir.1974):

We hold that Recile was not entitled to entry of a judgment granting his discharge nunc pro tunc. Recile's assertion rests on the principle that such entry is appropriate where judgment "though formally pronounced, ha[s] from accident or from negligence of the clerks never been put on record". Freeman on Judgments § 122 (5th ed. 1925); see, e.g., United States v. Chicago & A. R. Co., 7 Cir.1918, 162 C.C.A. 273, 250 F. 101. But it is also the rule that

...the entire purpose of entering judgments and decrees as of some prior date is to supply matters of evidence, and not to supply or modify matters of fact. The failure of a court to act, or its incorrect action, can never authorize a nunc pro tunc entry. If a court does not render judgment, or renders one which is imperfect or improper, it has no power to remedy any of these errors or omissions by treating them as clerical misprisions.

Freeman on Judgments § 131; see Gray v. Brignardello, 68 U.S. (1 Wall.) 627, 17 L.Ed. 693. And the burden is on the party seeking nunc pro tunc entry where no judgment has been recorded to prove that the failure to record is the result wholly of clerical misprision, rather than of the failure of the court to act.

No effect whatever can thus be given to the claimed February 21 nunc pro tunc order.[9] It therefore follows that the 1986 indictment was void. *United States v.*

7. As Opinion 1 held, that order, prepared by the United States Attorney's office for Chief Judge McGarr's signature, clearly reflected a misreading of 18 U.S.C. § 3331(a). In response to Opinion 1, the government acknowledged its error, and that acknowledgement led to this Court's dismissal of the 1986 indictment in Opinion 2.

8. As a reading of App. 3 discloses, the order (again drafted by the United States Attorney's office) was quite fuzzy about just what had and had not taken place at the critical May 1986 time period. After the order was entered, however, government counsel located and submitted

documentary proof that showed conclusively the issue of the grand jury's extension had *not* been brought before Chief Judge McGarr—as the result of a conscious decision by the United States Attorney's office.

9. This Court of course expresses no opinion as to the propriety of any other nunc pro tunc order recently issued by former Chief Judge McGarr, dealing with any other nonrenewed grand jury under what may have been quite different factual circumstances.

*Fein,* 504 F.2d 1170, 1173 (2d Cir.1974); [10] *United States v. Johnson,* 123 F.2d 111, 120 (7th Cir.1941), *rev'd on other grounds,* 319 U.S. 503, 63 S.Ct. 1233, 87 L.Ed. 1546 (1943) (a reversal that, at least by implication, effectively confirmed the nullity of an indictment by a grand jury that was then without legal existence; see *id.* at 507, 508, 63 S.Ct. at 1235, 1236). Nor may considerations of expediency be permitted to change that result. As *Fein,* 504 F.2d at 1180–81 said so eloquently:

> We are, of course, fully cognizant of the fact that our decision here constitutes much more than an academic discussion and that other indictments will be dismissed on the basis of this opinion. It may well be that criminal proceedings which would be in the public interest will be frustrated and that those who might be found guilty will escape trial and conviction. However, it is fundamental to our jurisprudence that the rule of law must prevail and that the prosecution of those suspected of crime must itself proceed according to the law, and not otherwise.

That, however, is not the end of the story. It remains to consider the impact of Section 3288 on the counts that would be barred by limitations if the same limited "tolling" principle that informed the first section of this opinion applied to those counts as well. Those are counts as to which less than five years had elapsed before the November 24, 1986 return of the invalid indictment in 86 CR 847, while more than five years had elapsed before the March 3, 1987 return of the current indictment in 87 CR 135:

| Count Number in 1987 Indictment | Date of Alleged Offense |
| --- | --- |
| Five | December 11, 1981 |
| Eight | January 19, 1982 |
| Fifteen | January 19, 1982 |
| Ten | January 29, 1982 |

*Effect of Section 3288*

In conceptual terms a so-called "indictment" voted by a non-renewed grand jury might be viewed as a total nullity—just as though a group of citizens had gathered themselves together wholly without legal sanction, decided Lytle and Patterson were probable lawbreakers and decided criminal charges should therefore be brought against them. But once again Congress has said in Section 3288:

> Whenever an indictment is dismissed for any error, defect, or irregularity with respect to the grand jury, ... after the period prescribed by the applicable statute of limitations has expired, a new indictment may be returned in the appropriate jurisdiction within six calendar months of the date of the dismissal of the indictment....

Thus the question reduces itself to one of statutory construction.[11] And despite the logical force of treating the 1986 "indictment" as a nullity, Congress was clearly competent—if it wished—to give that piece of paper limited effect under Section 3288, by permitting a fresh and valid indictment after dismissal of the null "indictment."

On that score the government has the better of the argument. In the normal sense of language this Court's dismissal of the 1986 indictment was surely triggered by "an error, defect, or irregularity with respect to the grand jury"—in fact, the *ultimate* "irregularity." And although there is (not surprisingly) precious little case law in the area, the Second Circuit has squarely held that to be so for Section 3288 purposes.

It will be recalled that same Court of Appeals was the one whose thoughtful opinion in *Fein* determined that the situation presented to it, one parallel in legal terms to the one involving the nonrenewal of the Special December 1983 Grand Jury here, had resulted in the total invalidity of the claimed indictments returned by that

---

**10.** Again it would lengthen this opinion unduly to repeat what has been said so well in *Fein.* Its entire discussion (504 F.2d at 1173–79) merits reading.

**11.** No constitutional issue would seem to be implicated by the congressional "tolling" (in the more frequent sense of that term) of limitations under Section 3288, any more than any congressional setting of a limitations period itself poses constitutional questions.

body. *Fein* was then followed in *United States v. Macklin*, 523 F.2d 193 (2d Cir. 1975), where the same court held the identical defect—a purported indictment by the same grand jury after its term had expired—had left the trial court *without jurisdiction*.[12] That set the stage for the same court's later opinion in *United States v. Macklin*, 535 F.2d 191 (2d Cir.1976) (*"Macklin II"*), because a new and valid indictment had been returned within six months after the earlier one had been dismissed *for lack of jurisdiction*. Even so— even with the most fundamental possible flaw having vitiated the first indictment— *Macklin II, id.*, at 193, held Section 3288 operated to save the new indictment from dismissal on limitations grounds (had it not been for the statutory saving provision, the statute of limitations would have expired before the second indictment was returned).

All Lytle's responsive memorandum can do is to contend *Macklin II* was wrongly decided. That argument is unpersuasive. To this Court *Macklin II*'s reading of Section 3288 reflects the reasonable and ordinary meaning of its language. Compare also the decisions in *United States v. Rabb*, 680 F.2d 294, 296–97 (3d Cir.), *cert. denied*, 459 U.S. 873, 103 S.Ct. 162, 74 L.Ed.2d 135 (1982) (involving a factual situation startlingly similar to the present one, including the fact that in *Rabb* the jury supervisor had given a reminder to the Assistant United States Attorney in charge of the grand jury to seek an extension of the grand jury's term, a message that went unheeded) and *United States v. Ponder*, 444 F.2d 816, 822–23 (5th Cir.1971), both of which cases arrived at wholly consistent results in somewhat different contexts.

This Court opts to follow *Macklin II*. Counts Five, Eight, Fifteen and Ten remain alive.

12. *Macklin* therefore required that the defendant be allowed to withdraw his guilty plea.

1. For some reason the draft order refers to the extension as having been made on motion of the United States Attorney. Under the circumstances that appears to be an error, but no explanation has been offered. As for the part of the order containing the extension itself, it is stated

*Conclusion*

Counts Three, Four, Seven and Sixteen of the 1987 indictment are dismissed because the statute of limitations had expired before return of the 1986 indictment (and a fortiori before return of the 1987 indictment). Counts Five, Eight, Fifteen and Ten remain viable because Section 3288 operated to save them between the time of dismissal of the 1986 indictment and the return of the 1987 indictment.

## APPENDIX 1

UNITED STATES OF AMERICA, Plaintiff,

v.

WILLIAM G. PATTERSON, Defendant.

No. 86 CR 847

IN THE UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF ILLINOIS EASTERN DIVISION

## MEMORANDUM OPINION AND ORDER

One of the issues posed by the current motions of defendant William Patterson ("Patterson") is the validity of his 1986 reindictment in light of its return by the Special December 1983 Grand Jury (the "Grand Jury"), sitting beyond its original 18–month term. Unfortunately the parties have not addressed all the relevant issues in that regard, and this order directs their attention to this matters.

This Court has been provided these documents in connection with the extension of the Grand Jury's term:

1. transcript of May 20, 1985 proceedings before then Chief Judge Frank McGarr, together with a May 20, 1985 draft order[1] and corresponding minute order by Judge McGarr; and

2. another draft order[2] and corresponding minute order by Chief Judge McGarr, each dated November 25, 1985.

to be "until further order of this Court"—and just what that means in legal terms must be determined in light of the matters referred to in the text of this opinion.

2. Again the draft order recites the extension was on the motion of the United States Attorney. This time nothing suggests whether that was

No transcript of proceedings has been furnished relating to the November 1985 extension, and the United States is ordered to furnish this Court and Patterson's counsel with copies of that transcript on or before February 9, 1987.

Something else appears to this Court to require explanation. Each party refers to Chief Judge McGarr's May 1985 order as though it were one contemplated by 18 U.S.C. § 3331(b).[3] Yet that statute says (emphasis added):

> (b) If a district court within any judicial circuit fails to extend the term of a special grand jury or enters an order for the discharge of such grand jury before such grand jury determines that it has completed its business, the grand jury, upon the affirmative vote of a majority of its members, may apply to the *chief judge of the circuit* for an order for the continuance of the term of the grand jury. Upon the making of such an application by the grand jury, the term thereof shall continue until the entry upon such application by the *chief judge of the circuit* of an appropriate order. No special grand jury term so extended shall exceed thirty-six months, except as provided in subsection (e) of section 3333 of this chapter.

Of course that is not what happened here, for under this District Court's Local General R. 1.04(a) Chief Judge McGarr then served as the only judge of this *district court* who dealt with grand juries—and the only statutory provision for extensions by a *district court* is in Section 3331(a), which allows such extension orders for only a six-month maximum in each instance.

Indeed the government's current memorandum correctly cites to *Korman v. United States*, 486 F.2d 926, 933 (7th Cir.1973) as approving the notion that special grand juries have the right to seek their own extensions. But *Korman* specifically ad-

dressed a Section 3331(a) extension, not one under Section 3331(b):

> Under 18 U.S.C. § 3331(a) the term of a Special Grand Jury may be extended either at the instigation of the jury members themselves by an affirmative vote of a majority of the members whereupon application for extension is made to the Chief Judge of the district for continuance, or, if in the opinion of the District Court the business has not been completed, that Court may order a six-month extension.

In *Korman* the extension, granted at the special grand jury's request by then Chief Judge Edwin Robson, was indeed limited to six months, 486 F.2d at 930, and that extension was of course found "authorized by the statute and within the discretionary powers of the District Court" (*id.* at 933).

It thus appears—at least on the face of things—that the only statutory authority for extension by a *district court* is that in Section 3331(a). And it further appears—again in facial terms—that a six-month limit applies to any such extension. Nothing submitted to this Court appears to have been an invocation of Section 3331(b).

There may be more to the matter than meets the eye, but this Court (which does not ordinarily deal with grand jury matters because of Local General R. 1.04(a), vesting such matters in the Chief Judge) has been unable to divine anything further—and this Court's independent research has not uncovered any case law construing the provisions in question. Both government counsel and Patterson's counsel[4] are ordered to file *brief* supplemental memoranda dealing with these issues on or before February 17, 1987.

/s/ Milton I. Shadur
Milton I. Shadur
United States
District Judge

Date: February 4, 1987

---

accurate or not. And once again the "until further order of this Court" language was used.

**3.** Further references to the statutory provisions will simply take the form "Section—," reflecting the Title 18 numbering.

**4.** Because each codefendant has adopted all motions by each other defendant, counsel for codefendants John Lytle and Jere Sturgis (who have an equal stake in the matter) are of course welcome to file contemporaneous memoranda.

## APPENDIX 2

UNITED STATES OF AMERICA, Plaintiff,

v.

WILLIAM G. PATTERSON, Defendant.

No. 86 CR 847

IN THE UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF ILLINOIS EASTERN DIVISION

### MEMORANDUM ORDER

In response to this Court's February 4, 1987 memorandum opinion and order (the "Opinion"), counsel for the United States and for defendant William Patterson have submitted supplemental memoranda as to the applicability of 18 U.S.C. § 3331(a) to the time of return of the indictment in this case. By its response the United States has (1) acknowledged the correctness of the analysis in the Opinion and (2) announced its intention to represent the indictment to a new grand jury on or before March 4, 1987.

In the meantime, the existing indictment is clearly invalid (having been returned by a grand jury whose term had expired, so that it was no longer authorized to conduct business). Accordingly the indictment is dismissed in its entirety (as to all three codefendants), but without prejudice. Counsel for the United States and for all defendants are notified that if reindictment takes place as the United States contemplates, this Court expects arraignments on the new indictment to take place promptly and:

1. All motions previously filed by any defendant as to the present (now dismissed) indictment shall stand as motions as to the new indictment.

2. Trial on the new indictment will begin May 5, 1987 at 9:45 a.m., the same date previously set for trial on the present (now dismissed) indictment. This is a *firm* date, and no extensions will be granted.

/s/ Milton I. Shadur
Milton I. Shadur
United States
District Judge

Date: February 18, 1987

## APPENDIX 3

IN THE MATTER OF THE SPECIAL DECEMBER 1983 GRAND JURY

UNITED STATES DISTRICT COURT NORTHERN DISTRICT OF ILLINOIS EASTERN DIVISION

### ORDER

On motion of the UNITED STATES OF AMERICA, by ANTON R. VALUKAS, United States Attorney for the Northern District of Illinois, the Court finds as follows:

1. On December 2, 1983, this Court entered an order calling for a special grand jury to be convened under 18 U.S.C. § 3331(a). Pursuant to that order, the Special December 1983 Grand Jury was convened in December 1983.

2. On May 25, 1985, this Court entered an order extending the grand jury's term of service beyond its original term of eighteen months. Under 18 U.S.C. § 3331(a), the effective term of the extension order was for six months.

3. On November 25, 1985, this Court entered an order extending the grand jury's term of service for an additional period of six months.

4. Prior to May 25, 1986, the Special December 1983 Grand Jury voted unanimously to extend its term of service for an additional period of six months. The grand jury informed the clerk of its decision, and instructed the clerk to present a motion for a judicial order of extension.

5. As Chief Judge for the District Court of the Northern District of Illinois, I was familiar with the volume of business being conducted before the Special December 1983 Grand Jury in the period prior to May 1986.

6. In the six months following the grand jury's May 1986 vote to extend its term of service, the Special December 1983

Grand Jury appeared before me on numerous occasions to return indictments and to conduct other business. On all of these occasions, I considered the grand jury to be a properly extended special grand jury, and I treated it as such.

7. I determined prior to May 25, 1986, that the grand jury had additional matters to transact, had not yet completed its business, and should therefore be extended another six months.

8. Based on my dealings with the Special December 1983 Grand Jury, I find that it was my intention in May 1986 to order that the grand jury continue to serve for an additional six months. This conclusion is supported by the fact that between May and December 1986 I considered the grand jury to be a properly extended grand jury, and I treated it as such.

9. The Clerk of the District Court for the Northern District of Illinois has been unable to locate a May 1986 judicial order extending the term of service of the Special December 1983 Grand Jury.

10. It now appears that, through inadvertence or mistake, the Clerk of the Grand Jury may have failed to present a motion to extend the term of the Special December 1983 Grand Jury beyond May 1986.

11. In view of my contemporaneous determination that the grand jury had not completed its business, and in view of my intention to allow the grand jury to serve for an additional six months, I find that any failure to enter an extension order was non-substantive and ministerial.

12. In order that the record may "speak the truth" and reflect accurately my original intentions and understandings, it is necessary that I enter an order *nunc pro tunc* extending the term of service of the Special December 1983 Grand Jury.

13. THEREFORE, IT IS HEREBY ORDERED that the Special December 1983 Grand Jury be extended from May 25, 1986 to November 25, 1986.

14. Based on the *nunc pro tunc* order of extension entered herein and based on the other findings I have made in this order, I further find and hold that the validity of all the indictments returned by

the Special December 1983 Grand Jury during the period May 25, 1986, to November 25, 1986, is not affected by any failure to enter an extension order in May 1986.

/s/ Frank J. McGarr

Feb. 21, 1987